**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re: | |
| KENNETH C. CASEY, INC. | Bankruptcy Case No. 15-20621 TBM<br>Chapter 7 |
| Debtor. | |
| JEFFREY L. HILL, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adv. Pro. No.  21-1070 TBM |
| LIBORIO LOYA PORTILLO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER GRANTING
TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

        The common saying, "he's not buying what you're selling," is a good summary of what happened in this confusing dispute involving the bankruptcy estate of Kenneth C. Casey, Inc. (the "Debtor").  The Debtor owned numerous parcels of real property located in Alamosa, Costilla, and Saguache counties in rural south-central Colorado. The Chapter 7 trustee assigned to liquidate the Debtor's estate, Jeffrey L. Hill (the "Trustee"), decided to sell some of the Debtor's real estate holdings.  Such non-ordinary course sales can only be conducted "after notice and a hearing" under Section 363(b)(1) of the Bankruptcy Code.[1]

        Toward that end, in 2016, the Trustee filed a "Sale Motion" wherein he specifically identified all of the "Property" (defined in the Sale Motion) to be sold.  With respect to Costilla County, Colorado, other than unitized lands not at issue in this dispute, the Trustee identified only three 40-acre parcels of real property (120 acres total) belonging to the Debtor and located in Sections 11 and 12 of Township 32 South and Range 73 West as part of the Property to be sold (the "Authorized Sale Property"). The Trustee also prepared a "Sale Notice" identifying all the Property to be sold,

---

[1]        All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

including the Authorized Sale Property.  The Trustee sent the Sale Motion and Sale Notice to all creditors.  No parties in interest objected.  Thereafter, the Court entered a "Sale Order" whereby the Court authorized the Trustee to sell, through an auction, the Property specifically identified in the Sale Motion and the Sale Notice: to wit, the Authorized Sale Property.

Unfortunately, the auctioneer conducted an auction whereat it offered only part of the Authorized Sale Property (80 acres instead of 120 acres) and then added to the auction an additional 240 acres of property in Costilla County owned by the Debtor but which was not identified in the Sale Motion or Sale Notice and which the Court did not authorize the Trustee to sell (the "Unauthorized Sale Property").  The Defendant, Liborio Loya Portillo ("Mr. Portillo"), paid the auctioneer $23,000.00 for it all:  the 80 acres forming part the Authorized Sale Property and the 240 acres of Unauthorized Sale Property.  Afterward, the Trustee (who did not compare the Sale Motion, Sale Notice, and Sale Order against the auction results) issued two trustee's deeds (together, the Trustee's Deeds") purporting to transfer title to all 320 acres (including part of the Authorized Sale Property and the Unauthorized Sale Property) to Mr. Portillo.  Later, the Trustee also sold a 40-acre parcel (which was part of the Unauthorized Sale Property subject to one of the Trustee's Deeds) to someone else:  Daniel G. Webb ("Mr. Webb").

Years afterward, a dispute surfaced concerning whether Mr. Portillo owns the real estate identified in the two Trustee's Deeds (i.e., part of the Authorized Sale Property and the Unauthorized Sale Property).  The Trustee now essentially claims there was a mistake.  He filed this lawsuit against Mr. Portillo requesting a declaratory judgment that the two Trustee's Deeds he issued to Mr. Portillo "are void and that Mr. Portillo has no interest in the real estate described [in the two trustee's deed]" because most of the real estate listed in the two Trustee's Deeds was not identified in the Sale Motion and the Sale Notice nor authorized by the Court to be sold in the Sale Order.  However, the Trustee does concede that Mr. Portillo should receive some type of refund.  The Trustee also asked that the subsequent sale to Mr. Webb be determined to be valid and enforceable.  Mr. Portillo contests the Trustee's claims and asserts that the two Trustee's Deeds are valid such that he is the owner of the real estate listed in the two trustee's deeds.  In addition, Mr. Portillo asserts a counterclaim against the Trustee seeking damages arising from the Trustee's "negligent breach of fiduciary duty."

In the lead up to trial, the Trustee filed a motion for summary judgment requesting summary judgment on the Trustee's declaratory judgment claim.  Mr. Portillo contests such relief.  Ultimately, the Court concludes that it cannot ratify purported sales of real property that do not comport with the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  Based upon the undisputed facts, the two Trustee's Deeds are void because most of the real estate listed in the two Trustee's Deeds was not identified in the Sale Motion and the Sale Notice nor authorized by the Court to be sold in the Sale Order.  Thus, declaratory judgment will enter in favor of the Trustee and against Mr. Portillo.  Declaratory judgment also will enter confirming the validity of the transfer to Mr. Webb.  But that will not be the end of the story.  The Court must determine the appropriate remedy for Mr. Portillo given that the two Trustee's

Deeds are void.  Also, Mr. Portillo's counterclaim against the Trustee for "negligent breach of fiduciary duty" will proceed to trial.

## I.     Jurisdiction and Venue.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and (e) and 28 U.S.C § 157(b).  This is a core proceeding under § 157(b)(2)(A) (a matter concerning administration of the Debtor's bankruptcy estate) and (O) a proceeding affecting the liquidation of the estate.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## II.     Procedural Background.

### A.     The Main Bankruptcy Case.

On September 22, 2015 (the "Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code, commencing Bankruptcy Case No. 15-20621 TBM (the "Main Case").[2]  On September 23, 2015, Jeffrey L. Hill was appointed in the Main Case to serve as Trustee for the Debtor's estate.[3]

Certain events which occurred in the Main Case following the Trustee's appointment are both "procedural history" and facts central to the dispute.  While the parties seem to view the legal import and effect of certain events which occurred in the Main Case through different lenses, the fact that such events occurred in the Main Case is not in dispute.  To the extent that such events constitute facts relevant to the Court's determination of the Trustee's claim, the Court will address such facts in the "Undisputed Facts" section of this Order.

### B.     The Adversary Proceeding.

The Trustee initiated this adversary proceeding on April 12, 2021, by filing a "Complaint"[4] against Mr. Portillo, Mr. Webb, and Dickensheet & Associates, Inc. ("Dickensheet"), seeking declaratory relief pursuant to Fed. R. Bankr. P. 7001. Specifically, the Trustee requested that the Court issue an order declaring that two Trustee's Deeds issued to Mr. Portillo are void because most of the real estate listed in the two Trustee's Deeds was not identified in the Sale Motion and the Sale Notice, and because its sale was not authorized by the Court in the Sale Order.  The Trustee also requested declaratory judgment that a trustee's deed issued to Mr. Webb is valid and enforceable.  Mr. Webb and Dickensheet have been dismissed as defendants from this adversary proceeding.[5]  Mr. Portillo filed an "Answer" in which he denied that the two

---

[2]      Main Case Docket No. 1.  The Court will refer to entries in the docket of this adversary proceeding by citing to "Docket No. __".  It will refer to entries in the Main Case by citing to "Main Case Docket No. __".)

[3]      Main Case Docket No. 4.

[4]      Docket No. 1.

[5]      Docket Nos. 28 and 39.

trustee's deeds are void and requested a jury trial.[6]  The Court struck Mr. Portillo's jury demand.[7]  Thereafter, Mr. Portillo submitted an "Amended Answer and Counterclaim," again denying that the two trustee's deeds are void and asserting a counterclaim against the Trustee for grossly negligent breach of fiduciary duty pursuant to 11 U.S.C. § 704 and 28 U.S.C. § 959.[8]

The real property dispute now comes before the Court for consideration on the "Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support thereof" (the "Summary Judgment Motion")[9] filed by the Trustee, the "Defendant's Response Opposing Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof" (the "Response")[10] filed by Mr. Portillo, and the Reply thereto (the "Reply")[11] filed by the Trustee.

### III.   Legal Standard Governing Motions for Summary Judgment and Burden of Proof.

Motions for summary judgment are governed by Fed. R. Civ. P. 56, as incorporated herein by Fed. R. Bankr. P. 7056.  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is "no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the record which it believes entitles it to judgment.  Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323.  In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Instead:

> [T]he nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. . . .  To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). *See also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (same); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013)

---

[6]    Docket No. 14.
[7]    Docket No. 47.
[8]    Docket No. 56.
[9]    Docket No. 58.
[10]   Docket No. 59.
[11]   Docket No. 60.

(nonmoving party has the affirmative duty of coming forward with evidence supporting his claim at summary judgment); *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (same).

In reviewing a motion for summary judgment, the Court must "view all facts and evidence in the light most favorable to the party opposing summary judgment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (brackets omitted). But, unsupported, conclusory allegations will not create an issue of fact, and the nonmoving party must do more than provide its subjective interpretation of the evidence. *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) (unpublished) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). "A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And, "[i]f the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate." *Id*. However, "when the evidence could lead a rational fact-finder to resolve a dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co. v. Westchester Fire Ins. Co.*, 728 F.3d 1189, 1189 (10th Cir. 2013).

Summary judgment need not be an all-or-nothing exercise disposing of every cause of action. Instead, a moving party may seek partial summary judgment disposing of certain claims or deciding important but discrete legal issues. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."). The ability of the Court to enter partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no issue of fact." Fed. R. Civ. P. 56(a) Advisory Committee Notes.

### IV.     Procedure for Selecting the Undisputed Facts.

The critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts. Only then can the Court apply the law to the facts and reach a legal conclusion. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

### A.     The Procedural Rules.

Procedural rules dictate how the alleged undisputed facts are to be presented and challenged. Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

(c) Procedures.

    (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

        (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Then, Fed. R. Civ. P. 56 provides the consequences for "failing to properly support or address a fact":

    (e) Failing to Properly Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

        (1) give an opportunity to properly support or address the fact;

        (2) consider the fact undisputed for purposes of the motion;

        (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

        (4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules.  L.B.R. 7056-1 governs summary judgment motions in Colorado and provides:

    (a) Motion and Memorandum in Support.  Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include:

6

        (1) a statement of the burden of proof;

        (2) the elements of the claim(s) that must be proved to prevail on the claim(s);

        (3) a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried;

        (4) a statement or calculation of damages, if any; and

        (5) any and all citations of law or legal argument in support of judgment as a matter of law.

The counterpoint is L.B.R. 7056-1(b) which governs oppositions to motions for summary judgment:

        (b) Response and Memorandum in Opposition. Responses in opposition must include:

        (1) any competing statements concerning the burden of proof, including burden shifting, together with legal authority supporting such statements;

        (2) any defenses to the elements of the claim(s) that must be proved to defeat such claim(s);

        (3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried;

        (4) a short and concise statement, in numbered paragraphs containing only one fact, of any additional facts as to which the opposing party contends are material and disputed;

        (5) a statement or calculation of damages, if any; and

        (6) any and all citations of law or legal argument in opposition to judgment as a matter of law.

Each alleged fact or contravention of fact (whether by the movant or the non-movant) must be properly supported. L.B.R. 7056-1(c) tells how:

(c)     Supporting Evidence.  Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record.   Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

Finally, L.B.R. 7056-1(d) states what happens if a non-movant does not properly contravene alleged undisputed facts:

(d)  Admission of Facts.  Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

**B.     The Trustee Complied With the Procedural Rules in Presenting Undisputed Facts**.

The Trustee complied with Fed. R. Civ. P. 56 and L.B.R. 7056-1 exactly.  In the Summary Judgment Motion, the Trustee identified 33 alleged undisputed facts and supported each of the alleged undisputed facts with citations to "particular parts of materials in the record, including depositions, documents . . . affidavits or declarations, . . . interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1); Mot. Summ. J. at 3-10.  More particularly, the Trustee cited to:  the Trustee's Affidavit; public Court records; and public real estate deeds.  The Court has carefully reviewed all of the 33 proffered undisputed facts asserted by the Trustee and compared such facts to the record citations.  Every alleged undisputed fact is accurate and fully supported in accordance with Fed. R. Civ. P. 56 and L.B.R. 7056-1, and so will be considered by the Court.

**C.**   **Mr. Portillo Failed to Comply With the Procedural Rules Since He Did Not Properly Contravene any of the Undisputed Facts Presented by the Trustee.**

In the Response, Mr. Portillo confirmed that he does not dispute the following alleged undisputed facts asserted by the Trustee:  Fact Nos. 1 (partially), 2, 5, 7-9, 11, 13-14, 17, 19-20, 22-23, 25-28, 30, and 33.  So those alleged facts are undisputed and will be considered as such for purposes of summary judgment.

However, for all the remaining alleged undisputed facts asserted by the Trustee, Mr. Portillo failed to comply with Fed. R. Civ. P. 56 and L.B.R. 7056-1.  Instead, of following the procedural rules, Mr. Portillo instead purported to "dispute" the alleged undisputed facts, but without citation to admissible evidence contravening any of the alleged undisputed facts presented by the Trustee and with no proper evidentiary objections.  Fed. R. Civ. P. 56(c)(1)(A); L.B.R. 7056-1(c).  For example, the Trustee asserted the following as alleged undisputed Fact No. 3:

> At no time during the Trustee's administration of the Estate did Trustee operate Debtor as a business or seek an order to do so pursuant to 11 U.S.C. § 721.  Ex. 1, ¶ 3.

Mot. Summ. J. at 3.  In support of such alleged undisputed fact, the Trustee cited his Affidavit, which confirms the alleged undisputed fact.  In response, Mr. Portillo stated only:

> Mr. Portillo cannot verify and therefore disputes the third fact cited by the Trustee.

Resp. at 3.  Mr. Portillo cut and pasted the same basic mantra ("cannot verify and therefore disputes") at least three other times in response to other alleged undisputed facts.  But such a response is improper for summary judgment practice because Mr. Portillo offered no admissible evidence contravening the alleged undisputed facts properly presented by the Trustee.  Fed. R. Civ. P. 56(c)(1)(A); L.B.R. 7056-1(c).

All of the other denials asserted by Mr. Portillo suffer from the same defect, since they baldly assert a dispute without contravening evidence.  For example, the Trustee asserted the following as alleged undisputed Fact No. 24:

> Assuming erroneously that the definition of Property from the Motion to Sell and the Sale Order was reflected in Deed '33 and Deed '34, and not realizing that Dickensheet had included additional parcels and acreage in the affidavit, auction, and the trustee's deeds, on July 20, 2018, the Trustee filed the Webb Motion to Sell.  *See* Ex. 1, ¶ 7.

9

Mot. Summ. J. at 9.  In support of such alleged undisputed fact, the Trustee cited his Affidavit which confirms the alleged undisputed fact.  In response, Mr. Portillo stated only:

> Mr. Portillo disputes in its entirety the twenty-fourth fact cited by the Trustee.

Resp. at 3.  However, just saying that he "disputes" alleged undisputed Fact No. 24 is not nearly enough at this late stage of the case.  If he really disputed alleged undisputed Fact No. 24, it was incumbent upon Mr. Portillo to come forward with contrary evidence or present an evidentiary objection to the admissibility of the Trustee's evidence.  Fed. R. Civ. P. 56(c)(1)(A); L.B.R. 7056-1(c).  But, Mr. Portillo offered no contrary evidence or evidentiary objections.  That same defect permeates all of Mr. Portillo's other generic denials.

The consequences of Mr. Portillo's failure to comply with the procedural requirements are clear.  Under Fed. R. Civ. P. 56(e), if a party fails "fails to properly address another party's assertion of fact as required by Fed. R. Civ. P. 56(c)" the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it."  Fed. R. Civ. P. 56(c)(2) and (3).  Similarly, L.B.R. 7056-1(d) establishes a presumption that alleged undisputed facts not properly contested are "deemed admitted."  Based on the foregoing, all of the Trustee's alleged undisputed Fact Nos. 1-33 asserted in the Summary Judgment Motion have been deemed admitted by Mr. Portillo and will be considered as undisputed by the Court.

## D.   The Court Will Not Consider Most of the Additional Facts Presented by Mr. Portillo.

In the Response, Mr. Portillo advanced six "Additional Facts Asserted by Defendant" as follows:

1. Mr. Webb entered into a land contract with an invalid description of a partial parcel that constituted an illegal sale of land under Colorado law.  (Exh. A.)

2. The Debtor, KKCI, maintained an invalid and unsanctioned subdivision map of inalienable parcels that were not recognized by Costilla County records.  (Exh. B.)

3. Mr. Webb was aware that his 40 acres was part of the larger parcel #11000272 when he applied in 2015 for a well permit.  (Exh. C.)

    4.   Mr. Webb was notified in January 2020 that his interest in the forty acres was invalid.  (Exh. D.)

    5.   Mr. Webb never recorded his land contract or any interest in parcel #11000272.  (Exh. E.)

    6.   The Barton Order issued by the Court left open many factual questions the Court could not explain or resolve regarding the notice provided and the actions of the Trustee.  (Exh. F)

Resp. at 5.  As set forth below, most of the foregoing alleged Additional Facts advanced by Mr. Portillo are improper legal argument, unsupported and/or inadmissible.

       With respect to Additional Fact No. 1, Mr. Portillo refers to a "land contract" with Mr. Webb, attached to the Response as Exhibit A (the "Webb Land Contract").  The Trustee did not object to the Court's consideration of the Webb Land Contract and did not deny with admissible evidence that Mr. Webb entered into the Webb Land Contract with the Debtor.  Accordingly, the Court will consider the Webb Land Contract.  However, the balance of Additional Fact No. 1 is improper.  The references to an "invalid description" and an "illegal sale of land under Colorado law" are not facts but instead merely legal argument.  And, nothing in Webb Land Contract supports that assertions about an "invalid description" and an "illegal sale of land under Colorado law."  Accordingly, except for consideration of the Webb Land Contract, the Court will not accept Additional Fact No. 1.

       Regarding Additional Fact No. 2, Mr. Portillo again interjects improper legal argument (*i.e.,* "an invalid and unsanctioned subdivision map") which will not be considered by the Court as an undisputed fact.  Additional Fact No. 2 also references a "subdivision map" attached to the Response as Exhibit B.  The Trustee has objected to Exhibit B as "inadmissible hearsay . . . not otherwise supported by an affidavit."  Reply at 3.  The Trustee's objection is valid.  As presented by Mr. Portillo, Exhibit B is inadmissible because there is no foundation by way of an affidavit or otherwise.  Also, the document appears to be prohibited hearsay for which Mr. Portillo has not presented an exception.  *See* Fed. R. Evid. 801-807.  So, the Court will not accept Additional Fact No. 2.

       With respect to Additional Fact No. 3, Mr. Portillo asserts that Mr. Webb "was aware" that "his 40 acres was part of the larger parcel #11000272 . . . ."  In support, Mr. Portillo references Exhibit C to his Response.  Exhibit C appears to be a hodgepodge of documents, including a well permit application, a well permit, the Webb Land Contract, a tax document, an Order from a Water Judge, a Judgment and Decree from a Water Judge, a Referee's Report and Ruling from a Water Referee, and a map.  The Trustee objected to Exhibit C as "inadmissible hearsay . . . not otherwise supported by an affidavit."  Reply at 3.  Again, the Trustee's objection is valid.  As presented by Mr. Portillo, Exhibit C is inadmissible because there is no foundation by way of an affidavit

or otherwise.  Also, the compilation of documents appears to be prohibited hearsay for which Mr. Portillo has not presented an exception.  *See* Fed. R. Evid. 801-807.  And, perhaps, most importantly, nothing in Exhibit C actually supports Additional Fact No. 3 at all.  So, the Court discards Additional Fact No. 3.

Regarding Additional Fact No. 4, Mr. Portillo asserts that "Mr. Webb "was notified in January 2020 that his interest in the forty acres was invalid."  In support, Mr. Portillo references his Exhibit D, which appears to be two trustee's deeds with unknown handwriting.  The Trustee objected to Exhibit D as "inadmissible hearsay . . . not otherwise supported by an affidavit."  Reply at 3.  Again, the Trustee's objection is valid.  As presented by Mr. Portillo, Exhibit D is inadmissible because there is no foundation by way of an affidavit or otherwise.  The Court does not know who placed their handwriting on Exhibit D or why.  Also, the handwritten portions of Exhibit D appear to be prohibited hearsay for which Mr. Portillo has not presented an exception.  *See* Fed. R. Evid. 801-807.  And, perhaps, most importantly, nothing in Exhibit D actually supports Additional Fact No. 4 because there is no mention of notice to Mr. Webb.  So, the Court rejects Additional Fact No. 4.

With respect to Additional Fact No. 5, Mr. Portillo asserts that "Mr. Webb never recorded his land contract or any interest in parcel #11000272."  In support, Mr. Portillo cites Exhibit E, which appears to be a computer screen print of "Account R003404."  The Trustee denied Additional Fact No. 6 and stated that it was contravened by the Trustee's Exhibit 13.  The Trustee did not otherwise object to Exhibit E.  The Court concurs that the Trustee properly contravened Additional Fact No. 5, so Additional Fact No. 5 is not undisputed.

Finally, regarding Additional Fact No. 6, Mr. Portillo merely attempts to characterize the Court's "Order Denying Motion for Leave to Litigate Against the Trustee in State Court Pursuant to the *Barton* Doctrine" (the "*Barton* Order")[12] as leaving "open many factual questions."  The Trustee states that the *Barton* Order "speaks for itself."  Characterizing the Court's *Barton* Order does not qualify as a fact for summary judgment purposes.  However, the Court will consider the *Barton* Order as part of the summary judgment record.

## V.   Undisputed Facts.

Having completed the exercise of analyzing each of the alleged Undisputed Facts asserted by the Trustee along with the Additional Facts advanced by Mr. Portillo and assessing whether such facts are supported or unsupported, admissible or inadmissible, and disputed or undisputed, the Court now restates the following as the "Undisputed Facts" which are fully supported and admissible:

In the Main Case, the Trustee did not operate the Debtor as a business or seek an order to do so pursuant to 11 U.S.C. § 721.[13]  Instead, the Trustee focused on

---

12      Main Case Docket No. 316.
13      Undisputed Fact No. 3.

liquidating assets of the Debtor, including the Debtor's various real estate holdings, in non-ordinary course transactions.[14]

## A.   Undisputed Facts Pertaining to the Transactions with Mr. Portillo.

On July 14, 2016, the Trustee filed the "Trustee's Combined Motion to Sell Real Property of the Estate at Public Auction; to Employ Dickensheet & Associates, Inc. as Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Motion").[15]  In the Sale Motion, the Trustee sought authority to sell certain real property of the Debtor's estate at public auction, namely "vacant land located in Colorado and more specifically identified in the attached Exhibit 1 (the "Property")."[16]  Exhibit 1 to the Sale Motion identified the specific Property to be sold as follows:[17]

Saguache County

| T-R | Section | 1/4 |
|-----|---------|-----|
| 41-9 | 11 | NE4SW4 |

Alamosa County

El Valle Del Sol Estates Tract 18

| T-R | Section | 1/4 |
|-----|---------|-----|
| 38-11 | 22 | NWSW |
| 38-11 | 22 | SWSW |
| 38-11 | 22 | SESW |

Costilla County

| T-R | Section | 1/4 |
|-----|---------|-----|
| 32-73 | 11 | SESE |
| 32-73 | 12 | SWSW |
| 32-73 | 12 | SESW |

San Luis Valley Ranches
Unit 20, Block 10, Lot 33
Unit 20, Block 33, Lot 4
Unit 20, Block 37, Lot 12
Unit 20, Block 39, Lot 3
Unit 20, Block 51, Lot 6

In support of the part of the Sale Motion requesting authorization for the Trustee to employ Dickensheet & Associates as auctioneer for the Property, the Trustee submitted an "Affidavit of Auctioneer / Liquidator" (the "Dickensheet Affidavit") executed

---

[14]     Undisputed Fact No. 4.
[15]     Undisputed Fact No. 5.  The Trustee submitted a copy of the Sale Motion as Exhibit 2.  It was originally filed in the Main Case at Docket No. 44.
[16]     Undisputed Fact Nos. 6 and 7.
[17]     Undisputed Fact No. 8 and Ex. 2.

by Christine Dickensheet.[18]  In the Dickensheet Affidavit, Ms. Dickensheet attested to a number of facts in support of her company's employment, providing background information about the company and her experience, and stating that neither she nor her employees have any connection to the Debtor, creditors, parties in interest and attorneys in the case, among other things.  Ms. Dickensheet also stated:

> 10. It is my understanding that the assets to be sold in the within case is undeveloped land with the legal description of:
> - Schedule 70365010, S.L.V.R. UNIT 20 BLK 39 LOT 3, COSTILLA COUNTY COLORADO
> - Schedule 70364580, S.L.V.R. UNIT 20 BLK 37 LOT 12, COSTILLA COUNTY, COLORADO
> - Schedule 70363810 S.L.V.R. UNIT 20 BLK 33 LOT 4, COSTILLA COUNTY, COLORADO
> - Schedule 70361170 S.L.V.R. UNIT 20 BLK 10 LOT 33, COSTILLA COUNTY, COLORADO
> - Schedule 70367400, S.L.V.R. UNIT 20 BLK 51 LOT 6, COSTILLA COUNTY, COLORADO
> - Schedule 11000273 (QCD 405-971) SE4SE4 SEC 11-32-73 CONT. 40 AC FROM SCHEDULE #11000272, COSTILLA COUNTY, COLORADO
> - Schedule 11000272 SW4SE4 & S2SW4 SEC 11-32-73 (120 AC) FROM SCH #11000270 S2S2 SEC 12-32-73 (160 AC) FROM SCHEDULE #11000270, COSTILLA COUNTY, COLORADO
> - Schedule 45000470 SE4SW4 OF SEC 32-31-73 (LOT 32-15) FROM SCHEDULE #40000640 (DC 405-616)
> - Parcel 528322300329 NW4SW4 22-38-11 40AC M/L WD REC #300866 1-23-01 ALAMOSA COUNTY, COLORADO
> - Schedule 485911300175  NE1/4SW1/4 11-41-9 SAGUACHE COUNTY, COLORADO
> - Parcel 528322300330  SW4SW4 22-38-11 40A/C M/L WD REC #300866 1-23-01, ALAMOSA COUNTY, COLORADO
> - Parcel 528322300331 SE4SW4 22-38-11 40AC M/L WD REC #300866 1-23-01, ALAMOSA COUNTY, COLORADO
> - Parcel 528334404027 EL VALLE DEL SOL ESTATES TRACT 18, ALAMOSA COUNTY, COLORADO

The foregoing list contained in Paragraph 10 of the Dickensheet Affidavit contains additional parcels and acreage beyond the Property defined in the Sale Motion as being offered for sale.[19]

Contemporaneously with filing the Sale Motion, the Trustee prepared, filed, and served a "Notice of Trustee's Combined Motion to Sell Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc. as Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Notice").[20]  The Sale Notice stated, in relevant part:

---

[18]     Undisputed Fact No. 9.  The Trustee submitted a copy of the Dickensheet Affidavit as part of Exhibit 2.

[19]     Undisputed Fact No. 10; *compare* Sale Motion Ex. 1 with Dickensheet Affidavit.

[20]     Undisputed Fact No. 11.  The Trustee submitted a copy of the Sale Notice as Exhibit 3.  It was originally filed in the Main Case at Docket No. 46.

YOU ARE HEREBY NOTIFIED that Jeffrey L. Hill, Chapter 7 Trustee ("Trustee"), has filed a Combined Motion to Sell Real Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc. as Auctioneer; and to Compensate Auctioneer Following Sale ("Combined Motion") and seeks the following relief:

Trustee seeks an order authorizing the estate to sell at a public auction certain real property located in Colorado free and clear of any interest in such property of an entity other than the estate, except for the Permitted Liens (as define din the Combined Motion).  The property is identified below (the "Property"):

Saguache County

| T-R | Section | 1/4 |
| --- | --- | --- |
| 41-9 | 11 | NE4SW4 |

Alamosa County
El Valle Del Sol Estates Tract 18

| T-R | Section | 1/4 |
| --- | --- | --- |
| 38-11 | 22 | NWSW |
| 38-11 | 22 | SWSW |
| 38-11 | 22 | SESW |

Costilla County

| T-R | Section | 1/4 |
| --- | --- | --- |
| 32-73 | 11 | SESE |
| 32-73 | 12 | SWSW |
| 32-73 | 12 | SESW |

San Luis Valley Ranches
Unit 20, Block 10, Lot 33
Unit 20, Block 33, Lot 4
Unit 20, Block 37, Lot 12
Unit 20, Block 39, Lot 3
Unit 20, Block 51, Lot 6

The Combined Motion seeks authority to employ Dickensheet & Associates, Inc. as auctioneers to conduct a public auction of the Property at a reasonable and customary date and time at 1501 West Wesley Avenue, Denver, Colorado.   The Combined Motion further requests court authorization to pay Dickensheet & Associates, Inc. a commission equal to ten percent (10%) of the gross sales proceeds, plus all necessary costs and expenses incurred in preparing and marketing the Property for sale, not to exceed a maximum of $1,000 per individual property, from the proceeds of sale.

The definition of "Property" in the Sale Notice was exactly the same as the definition of "Property" in the Sale Motion. [21]  No reference was made to the Dickensheet Affidavit in the Sale Notice.

On July 14, 2016, the Trustee served all creditors with the Sale Motion and Sale Notice as reflected on a "Certificate of Service."[22]  The Sale Notice was the only notice of sale transmitted to creditors and parties in interest pertaining to the Property.[23]

---

[21]     Undisputed Fact No. 11; *compare* Sale Motion and Sale Notice (Exs. 2 and 3).
[22]     Undisputed Fact No. 12.  The Trustee submitted a copy of the Certificate of Service as Exhibit 4. It was originally filed in the Main Case at Docket No. 47.
[23]     Undisputed Fact No. 12.

No creditor or party in interest objected to the Sale Motion.[24]  Therefore, on August 12, 2016, the Court entered an "Order Authorizing Trustee to Sell Real Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc., as Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Order").[25] Therein, the Court authorized the Trustee to auction the "Property (as defined in the [Sale] Motion)."[26]  More specifically, the Sale Order stated, in relevant part:

ORDERS that the Motion is granted and approved.

The Court FURTHER ORDERS as follows:

1.       Trustee is authorized to employ and retain Dickensheet & Associates, Inc. for the purpose of conducting a public auction of the Property (as defined in the Motion) in accordance with the terms set forth in the Motion;

2.       Trustee is authorized pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code to convey to the winning bidders of the public auction all of the bankruptcy estate's right, title, and interest in and to the Property, or any portion thereof, free and clear of any liens, claims or encumbrances, except for the Permitted Exceptions (as defined in the Motion) . . . .

Thus, with respect to Costilla County, the only three 40-acre parcels of vacant land that the Court authorized the Trustee to sell were:

- •     Township 32[27] Range 73[28] Section 11 SE1/4SE1/4 (40 acres);

- •     Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres); and

- •     Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres).

---

[24]      *See, generally,* Main Case Docket.
[25]      Undisputed Fact No. 13.  The Trustee submitted a copy of the Sale Order as Exhibit 5.  It was originally filed in the Main Case at Docket No. 55.
[26]      Undisputed Fact Nos. 14 and 15.
[27]      In the Sale Motion, the Trustee did not identify the direction associated with "Township 32."  The only "Township 32" located in Costilla County, Colorado is Township 32 South.  Throughout this decision, and as the parties have, the Court will use the shorthand "Township 32."  However, for clarity, "Township 32" really means Township 32 South.
[28]      In the Sale Motion, the Trustee did not identify the direction associated with "Range 73." However, the correct Range is Range 73 West.  Throughout this decision, and as the parties have, the Court will use the shorthand "Range 73."  However, for clarity, "Range 73" really means Range 73 West.

The Court will refer to the foregoing three 40-acre parcels (which together total 120 acres) as the "Authorized Sale Property."[29]  In the Sale Order, the Court also authorized the Trustee to employ and retain Dickensheet for the purpose of conducting a public auction of the 120 acres of the Authorized Sale Property (and the other Property defined in the Sale Motion).  However, in the Sale Order, the Court did not refer to the Dickensheet Affidavit nor the expanded list of real estate parcels contained in the Dickensheet Affidavit.

About two weeks after the entry of the Sale Order, on August 27, 2016, Dickensheet conducted a public auction.[30]  According to the Report of Sale prepared by Dickensheet, Mr. Portillo was the successful bidder for 320 acres of land in Costilla County, Colorado, consisting of Lot No. 3507 (280 acres purchased for $20,500.00) and Lot No. 3508 (40 acres purchased for $2,500.00).[31]  Since the Authorized Sale Property consists of only 120 acres, it is apparent that Dickensheet offered, and Mr. Portillo purported to buy, much more real estate (320 acres) than that listed in the Sale Motion and Sale Notice and authorized by the Court to be sold in the Sale Order.

Following the auction, Dickensheet prepared two trustee's deeds which were issued to Mr. Portillo.[32]  The first trustee's deed is dated October 4, 2016, signed by the Trustee, and was recorded by the Costilla County Recorder on April 20, 2017, at Reception No. 291633 (the "'33 Deed").[33]  The '33 Deed corresponds with Lot No. 3507 and purports to transfer seven 40-acre parcels (280 acres total) of real estate from the Debtor's Estate to Mr. Portillo.  Only two 40-acre parcels (80 acres total) identified in the '33 Deed were listed in the Sale Motion and Sale Notice and authorized by the Court to be sold in the Sale Order (and were thus part of the Authorized Sale Property).  The second trustee's deed is dated October 4, 2016, signed by the Trustee, and was recorded by the Costilla County Recorder on April 20, 2017 at Reception No. 291634 (the "'34 Deed").[34]  The '34 Deed corresponds with Lot No. 3508 and purports to transfer one 40-acre parcel of real estate from the Debtor's Estate to Mr. Portillo, which real estate was not listed in the Sale Motion or Sale Notice and not authorized by the Court to be sold in the Sale Order (and was thus not part of the Authorized Sale Property).  In executing the '33 Deed and the '34 Deed, the Trustee "assum[ed] erroneously that the definition of the Property from the [Sale Motion] and the Sale Order was reflected in the ['33 Deed] and ['34 Deed]."[35]  The Court will sometimes refer to the '33 Deed and the '34 Deed, collectively, as the "Trustee's Deeds."

---

[29]   The Court also authorized the sale of five unitized lots located in San Luis Valley Ranches, Costilla County, Colorado.  However, that authorization is not relevant to the current dispute. So, the Court makes no further reference to such other Costilla County lots.

[30]   Undisputed Fact No. 17.  The Trustee submitted a copy of the Dickensheet & Associates Report of Sale (along with a Seller Settlement) as Exhibit 6.  It was originally filed in the Main Case at Docket No. 58.

[31]   Undisputed Fact No. 22.

[32]   Undisputed Fact No. 18.

[33]   Undisputed Fact No. 19.  The Trustee submitted a copy of the '33 Deed as Exhibit 7.

[34]   Undisputed Fact No. 20.  The Trustee submitted a copy of the '34 Deed as Exhibit 8.

[35]   Undisputed Fact No. 24.

The following chart lists all eight of the parcels of real estate included in the Trustee's Deeds and also contains columns identifying whether each of the eight parcels of real estate was listed in the Sale Motion and Sale Notice as well as authorized to be sold per the Sale Order:

| Parcel[36] | Legal Description (All 40 Acres Each in Range 73W) | Trustee Deed No. and Auctioneer Lot No. | Identified in Sale Motion and Sale Notice | Authorized to Be Sold by Sale Order |
|---|---|---|---|---|
| 1 | SW1/4SW1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 2 | SE1/4SW1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 3 | SW1/4SE1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 4 | SW1/4SW1/4 Township 32S Section 12 | '33 Deed Lot 3507 | Yes | Yes |
| 5 | SE1/4SW1/4 Township 32S Section 12 | '33 Deed Lot 3507 | Yes | Yes |
| 6 | SW1/4SE1/4 Township 32S Section 12 | '33 Deed Lot 3507 | No | No |
| 7 | SE1/4SE1/4 Township 32S Section 12 | '33 Deed Lot 3507 | No | No |
| 8 | SE1/4SW1/4 Township 31S Section 32 | '34 Deed Lot 3508 | No | No |

So, only Parcel Nos. 4 and 5 are part of the Authorized Sale Property identified in the Sale Motion and Sale Notice, and are the only parcels authorized to be sold by the Sale Order. Thus, all the other six parcels (Parcel Nos. 1-3 and 6-8) were not identified in the Sale Motion and Sale Notice and the Court did not authorize sale through the Sale Order (the "Unauthorized Sale Property").

**B.    Undisputed Facts Pertaining to the Transaction with Mr. Webb.**

On July 20, 2018, more than a year after the recording of the Trustee's Deeds, the Trustee filed a "Motion to Sell Real Estate (Costilla 12-13) Pursuant to 11 U.S.C.

---

[36]    The "Parcel Nos." are used in the generic sense of referring to parcels of real property and numbered only for purposes of convenience for this Order. The "Parcel Nos." do not refer to parcel numbers assigned in real property records.

§ 363(b)" (the "Webb Sale Motion").[37]  Through the Webb Sale Motion, the Trustee proposed to sell a single 40-acre parcel of land in Costilla County, Colorado:  Township 32 Range 73 Section 12 SE1/4SE1/4, to Mr. Webb pursuant to the Webb Land Contract into which the Debtor and Mr. Webb had entered prior to the Petition Date.[38]  The Court refers to this parcel of real property as the "Webb Parcel."[39]  The Webb Parcel corresponds to part of the Unauthorized Sale Property (Parcel No. 7) purportedly sold to Mr. Portillo and conveyed to him through the '33 Deed.

Notice of the Webb Sale Motion was provided to creditors and parties in interest in the Main Case (the "Webb Sale Notice").[40]  No party objected to the Webb Motion to Sell.[41]  Accordingly, the Court granted the Webb Sale Motion on August 16, 2018 (the "Webb Sale Order").[42]  After entry of the Webb Sale Order, the Trustee executed another trustee's deed conveying the Webb Parcel to Mr. Webb (the "Webb Deed").[43]  At the time that he executed the Webb Deed, the Trustee did not realize that the Webb Parcel had been listed in the '33 Deed.[44]  The Webb Deed was recorded (about 16 months after the Webb Sale Order) with the Costilla County Recorder on January 14, 2020, at Reception No. 302065.[45]

## VI.   Legal Analysis and Conclusions.

Through the Summary Judgment Motion, the Court is called upon to decide two discrete legal questions:  (1) whether the Trustee's Deeds issued to Mr. Portillo are void as a matter of law; and (2) whether the Trustee's sale of the Webb Parcel to Mr. Webb is valid as a matter of law.

## A.   Overview of the Parties' Arguments.

In the Summary Judgment Motion, the Trustee characterizes the issuance of the Trustee's Deeds (which do not comport with the definition of "Property" in the Sale Motion, Sale Notice, and Sale Order; and which instead include the Unauthorized Sale Property) as "erroneous."  He asserts that the purported conveyances of the Unauthorized Sale Property to Mr. Portillo are void as matter of law because the Trustee did not give proper notice of any sale of the Unauthorized Sale Property to creditors and parties in interest (through the Sale Motion and Sale Notice) and because the Court never authorized the sale of the Unauthorized Sale Property.  Accordingly, the

---

[37]    Undisputed Fact No. 25.  The Trustee submitted a copy of the Webb Sale Motion as Exhibit 10.  It was originally filed in the Main Case at Docket No. 149.

[38]    The Webb Land Contract is attached to the Webb Sale Motion as part of Exhibit 10.  Mr. Portillo also submitted the Webb Land Contract as part of Additional Fact No. 1 (Ex. A).

[39]    In his Response, Mr. Portillo refers to the same parcel as "parcel no. 11000272."

[40]    Undisputed Fact Nos. 25 and 26 and Exhibits 10 and 11.  The Notice and Certificate of Service were filed in the Main Case at Docket Nos. 149 and 150.

[41]    See, generally, Main Case Docket.

[42]    Undisputed Fact No. 28.  The Trustee submitted a copy of the Webb Sale Order as Exhibit 12. The Webb Sale Order was filed in the Main Case at Docket No. 159.

[43]    Undisputed Fact No. 28.  The Trustee submitted a copy of the Webb Deed as Exhibit 13.

[44]    Undisputed Fact No. 29.

[45]    Undisputed Fact No. 30 and Exhibit 13.

Trustee requests that the Court enter summary judgment declaring the Trustee's Deeds issued to Mr. Portillo void.  In addition, the Trustee contends that the sale of the Webb Property to Mr. Webb per the Webb Sale Motion, Webb Sale Notice, and Webb Sale Order was proper in all respects.  Thus, he urges the Court to enter summary judgment declaring that the Webb Deed is valid.

Mr. Portillo disputes that the purported conveyances to him through the Trustee's Deeds are void.  He argues that the Trustee's declaratory judgment claim is an improper collateral attack on the Sale Order pursuant to Fed. R. Civ. P. 60(b)(4) and that it is similar to a quiet title claim brought not on behalf of the bankruptcy estate, but rather on behalf of Mr. Webb.  Mr. Portillo further asserts that he is a good-faith purchaser for value pursuant to the Sale Order, and that his purchase is protected by Section 363(m).  Based on his contention that the Trustee's Deeds are valid, Mr. Portillo argues that the Webb Deed is invalid.

## B.   <u>Legal Framework</u>.

Having already identified the Undisputed Facts, the Court concludes that the remaining issues are particularly well-suited to summary adjudication since they are merely disputes of law.  *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; L.B.R. 7056-1. The Court starts its analysis with the applicable legal framework.

The main objective of Chapter 7 bankruptcy is liquidation of property of a debtor's estate followed by distribution of proceeds to creditors.  After all, the title of Chapter 7 is: "Liquidation."  And, the very first statutory mandate for a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which trustee serves . . . ." 11 U.S.C. § 704(a)(1).

The Bankruptcy Code dictates how a Chapter 7 trustee is to liquidate property of the estate.  11 U.S.C. § 363 (titled "Use, sale, or lease of property").  Section 363(b)(1) states:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .[46]

The phrase "after notice and hearing" is common in the Bankruptcy Code and further defined by statute:

> In this title . . . "after notice and a hearing," or a similar phrase —
>
>> (A)  means after such notice as is appropriate in the particular circumstances, and such opportunity for a

---

[46]   The Trustee and Mr. Portillo both concur that all of the Trustee's sales of real estate (whether authorized or unauthorized) were "other than in the ordinary course of business."

hearing as is appropriate in the particular
circumstances; but

(B) authorizes an act without an actual hearing if such
notice if given properly and if —

(i) such a hearing is not requested timely by a party
in interest; or

(ii) there is insufficient time for a hearing to be
commenced before such an act must be done,
and the court authorizes such act . . . .

11 U.S.C. § 102(1).  Thus, notice is always required if the Bankruptcy Code provides
that action may only be taken "after notice and a hearing"; but if there is no objection
and request for a hearing, the Court need not conduct an actual hearing.

Procedural rules supplement Sections 363(b)(1) and 102(1).  For example, with
respect to the notice referenced in Section 363(b)(1), Fed. R. Civ. P. 2002(a)(2)
dictates:

. . . the clerk, or some other person as the court may direct,
shall give the debtor, the trustee, [and] all creditors . . . at
least 21 days' notice by mail of . . . a proposed use, sale, or
lease of property of the estate other than in the ordinary
course of business . . .

In terms of the content of the required notice for proposed Section 363(b)(1) sales, Fed.
R. Bankr. P. 2002(c)(1) provides:

Subject to Rule 6004 the notice of a proposed use, sale, or
lease of property required by subdivision (a)(2) of this rule
shall include the time and place of any public sale, the terms
and conditions of any private sale and the time fixed for filing
objections.  The notice of proposed use, sale, or lease of
property, including real estate, is sufficient if it generally
describes the property.

Fed. R. Bankr. P. 6004 reinforces the notice requirement and also sets forth more
details about objections and the conduct of proposed sales.

The United States Bankruptcy Court for the District of Colorado has issued its
own Local Rules which supplement and clarify the Federal Rules of Bankruptcy
Procedure.  For example, L.B.R. 2002-1(a) directs that "[u]nless otherwise ordered by
the Court, the movant or applicant must provide notice as required by Fed. R. Bankr. P.
2002. . . ."  And, L.B.R. 6004-1(b)(1) mandates that:

21

> . . . all Sale Motions shall attach or include the following:  (1)
> a description of the property to be sold.  If the property is real
> estate, then the legal description must be included.

Together, the Bankruptcy Code (Sections 363(b)(1) and 102(1)), the Federal
Rules of Bankruptcy Procedure (Rules 2002 and 6004), and the Local Bankruptcy Rules
(Rules 2002-1 and 6004-1) require that the movant must provide three weeks' advance
notice of a proposed sale of real estate to all creditors.  The notice must include the
legal description of the real estate and provide an opportunity to object and request a
hearing.

The purpose of requiring advance notice is manifest:  to protect the due process
rights of creditors.  "The normal operation of the Bankruptcy Code . . . is predicated on
the satisfaction of constitutional standards of due process." *In re Arch Wireless*, 332
B.R. 241, 251 (Bankr. D. Mass. 2015).  Indeed, "'[t]he fundamental requisites of due
process consist of notice and an opportunity to be heard at a meaningful time and in a
meaningful manner.'" *Turney v. F.D.I.C.*, 18 F.3d 865, 868 (10th Cir. 1994) (quoting *In
re A.H. Robins Co.*, 107 F.R.D. 2, 6 (D. Kan. 1985) and citing *Goldberg v. Kelly*, 397
U.S. 254 (1970)).  As such, a bankruptcy trustee must give "notice reasonably
calculated, under all circumstances, to apprise interested parties of the pendency of the
action and afford them an opportunity to present their objections."  *Mullane v. Central
Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  *See also Turney*, 18 F.3d at 868
(quoting *Bank of Marin v. England*, 385 U.S. 99, 102 (1966) and *Mullane*).

As the Trustee notes in the Summary Judgment Motion, under the Bankruptcy
Code and the Federal Rules of Bankruptcy Procedure:

> A trustee's authority to sell property of the estate outside the
> ordinary course of business is  . . . confined to those
> instances in which such notice has been given.  The usual
> effect of a sale or lease of property of the estate, conducted
> outside of the ordinary course of business but without
> adherence to the notice and hearing requirements of
> § 363(b)(1), is that any sale held is rendered null and void.

*In re Weisser Eyecare, Inc.*, 245 B.R. 844, 850 (Bankr. D. Ill. 2000).  *See also M.R.R.
Traders, Inc. v. Cave Atlantique*, 788 F.2d 816 (1st Cir. 1986) (affirming order setting
aside sale order where notice of sale was not provided to party in interest); *McTigue v.
American Sav. & Loan Assoc. of Fla. (In re First Baptist Church, Inc.)*, 564 F.2d 677,
679 (5th Cir.1977) ("[A] sale without a required Rule [2002(a)(2)] notice may be set
aside."); *In re Auld*, 2014 WL 3696720, at *3 (Bankr. D. Kan. Jul. 23, 2014) (noting that
transfers made without compliance to notice requirements of section 363(b) and Rule
6004 have been held void); *In re Donohue*, 410 B.R. 311 (Bankr. D. Kan. 2009) (setting
aside sale order entered pursuant to Section 363(b) upon finding that notice to creditors
and parties in interest was deficient).

Many judicial decisions under Section 363(b)(1) involve a common scenario: a trustee provides notice of a proposed sale to most creditors; no objections or requests for a hearing are received; the bankruptcy court enters an uncontested order authorizing the sale; and, after the entry of the sale order, a creditor who failed to receive proper notice learns of the sale and attacks the validity of the sale order. More unusually, a trustee may skip Section 363(b)(1) altogether by not providing any notice at all but still purporting to dispose of estate property. The latter type of cases are especially clear cut. *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379 (2d Cir. 1997) is an example. The appellate court declared a simple rule:

> Because [the debtor] gave no notice of the proposed [transaction under Section 363(b)(1)] to his creditors, the transaction is null and void if it was beyond the ordinary course.

*Id*. at 384. The Tenth Circuit adopted a similar approach a long time ago under the Bankruptcy Act. *Mason v. Ashback*, 383 F.2d 779 (10th Cir. 1967). In that case, a trustee tried to sell a chose in action, but "[t]he record [did] not reflect that notice of the sale was given to creditors . . . ." *Id*. at 780. The appellate panel decided that under such circumstances, "[t]he sale was wholly illusory." *Id*. (quotation omitted); *see also Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.),* 859 F.2d 1127 (2d Cir. 1988) (bankruptcy court did not err in nullifying debtor-in-possession's post-petition transfer of substantially all of its assets without notice and a hearing as required by Section 363(b)(1)); *Murphy v. Malone (In re Century Steel, Inc.)*, 56 B.R. 268, 270 (Bankr. M.D. La. 1985) ("Since the trustee did not have authority to sell until after notice and a hearing, there was no sale."); *Command Performance Operators, Inc. v. First Int'l Servs. Corp. (In re First Int'l Servs. Corp.)*, 25 B.R. 66, 71 (Bankr. D. Conn. 1982) ("the defendants' failure to comply with 11 U.S.C. § 363(b) forms an independent basis for voiding the entire [transaction]").

In addition to notice, the "after notice and a hearing" requirement in Section 363(b)(1) also implies that the Court must adjudicate (either approve or deny) a proposed sale of property of a debtor's estate. After all, there would be no reason for the Court to conduct a "hearing" if the Court was not required to authorize a proposed sale of property of the debtor's estate. Appellate precedent dictates the law that the Court must apply in assessing a Chapter 7 trustee's motion to sell property of a debtor's estate outside the ordinary course. The legal standard is the "business judgment" test which is quite deferential to Chapter 7 trustees. *Allen v. Absher (In re Allen)*, 607 Fed. Appx. 840, 843 (10th Cir. 2015) (unpublished); *see also In re Colo. Sun Oil Processing LLC,* 2011 WL 3585565 (Bankr. D. Colo. Apr. 12, 2011) (endorsing business judgment test); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (same). In making a "business judgment" determination, a Court should consider evidence of:

> [1] "[a]ny improper or bad motive," whether [2] "[t]he price is fair and the negotiations or bidding occurred at arm's length,"

and [3] whether the trustee followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest."

*Allen*, 607 Fed. Appx. at 843 (quotations omitted).  When evaluating such factors, the Court "should give deference to a trustee's judgment in pursuing a sale motion."  *Colo. Sun Oil*, 2011 WL 3585565, at *9.  After applying the business judgment test, the Court must authorize or reject proposed sales.

## C.   The Trustee's Deeds Are Void as a Matter of Law.

In this Adversary Proceeding, the Trustee argues that the Trustee's Deeds are void because Dickensheet purported to auction the Unauthorized Sale Property and the Trustee executed the Trustee's Deeds "erroneously" because:  (1) the Sale Motion did not identify the Unauthorized Sale Property as being proposed to be sold; (2) the Sale Notice did not identify the Unauthorized Sale Property as being proposed to be sold; and (3) the Court did not authorize the Trustee to sell the Unauthorized Sale Property. The Undisputed Facts dictate that each of the foregoing contentions is correct.

In the Sale Motion, the Trustee sought authority to sell certain real property of the Debtor's estate at public auction, namely "vacant land located in Colorado and more specifically identified in the attached <u>Exhibit 1</u> (the "Property")."[47]  Thus, Exhibit 1 to the Sale Motion is the definition of the "Property" to be sold.  And, such Property was identified by legal description.  As it pertains to non-unitized land in Costilla County, Colorado, Exhibit 1 to the Motion listed only the following for sale:

- Township 32 Range 73 Section 11 SE1/4SE1/4 (40 acres);

- Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres); and

- Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres).

As set forth above, the Court refers to such real estate as the Authorized Sale Property, which totals 120 acres.  Neither in the Sale Motion nor in Exhibit 1 to the Sale Motion did the Trustee identify all the other real estate constituting the Unauthorized Sale Property as being for sale under Section 363(b)(1).  Mr. Portillo points out that the Dickensheet Affidavit (which was attached to the Sale Motion) contained a different listing of "undeveloped land."  So be it.  However, the Dickensheet Affidavit was submitted solely to support the employment of Dickensheet & Associates as an auctioneer under Section 327(a).  The Dickensheet Affidavit served no other purpose. Although best practice suggests that Chapter 7 trustees should not "combine" motions to sell under Section 363(b)(1) with motions to employ professionals under Section

---

[47]       Undisputed Fact Nos. 6 and 7.

327(a), the erroneous listing in the Dickensheet Affidavit in no way alters the narrow legal description of the Authorized Sale Property in the Sale Motion and Exhibit 1 to the Sale Motion.  Thus, the Court concludes that the Trustee did not seek to sell the Unauthorized Sale Property through the Sale Motion.

The Sale Notice is entirely consistent with the foregoing and perhaps even more clear.  In the text of the Sale Notice, the Trustee expressly identified the 120 acres of the Authorized Sale Property as the only non-unitized land in Costilla County, Colorado, to be sold.  The Sale Notice is especially dispositive because it did not cross-reference any attached exhibit.  Instead, the legal description of the Authorized Sale Property was right there in the body of the Sale Notice.  And, then, the Chapter 7 Trustee sent the Sale Motion and the Sale Notice out to all creditors.  No reasonable person could conclude from the Sale Motion or the Sale Notice that the Trustee was seeking to sell the Unauthorized Sale Property.

No creditor or party in interest objected to the Sale Motion.  After reviewing the Sale Motion, the Court entered the Sale Order.  In the Sale Order, the Court authorized the Trustee to sell only "the Property (as defined in the [Sale] Motion)."  Thus, the Court authorized the Trustee to sell just the 120 acres of real estate constituting the Authorized Sale Property.  The Court certainly did not authorize the Trustee to sell all the Unauthorized Sale Property which, after all, was not "defined in the [Sale] Motion." No party in interest appealed the Sale Order.  So, the Sale Order is final.

Then, Dickensheet purported to auction eight parcels of real estate: two parcels of the Authorized Sale Property (totaling 80 acres); plus six additional parcels of the Unauthorized Sale Property (totaling 240 acres).  Mr. Portillo was the high bidder for it all.  Next, the Trustee "erroneously" issued the Trustee's Deeds to Mr. Portillo.  None of the Undisputed Facts illuminate the reasons for the errors nor the possible responsibility or liability of Dickensheet and/or the Trustee for the mistakes.  The Court has not been asked to adjudicate such issues in the Summary Judgment Motion.

It is enough for now simply to reiterate that the Unauthorized Sale Property was not proposed to be sold in the Sale Motion, was not listed as property to be sold in the Sale Notice, and was not authorized to be sold by the Court in the Sale Order.  Thus, the purported sale of the Unauthorized Sale Property most assuredly did not comply with Section 363(b)(1) and the supplemental Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules.  The legal result is patent and unfortunate for Mr. Portillo. Since the Trustee did not comply with Section 363(b)(1) and the supplemental Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, any purported sale of the Unauthorized Sale Property is "rendered null and void."  *Weisser Eyecare*, 245 B.R. at 850.  *See also Lavigne*, 114 F.3d at 384; *Cedar Tide,* 859 F.2d 1127; *M.R.R. Traders*, 788 F.2d 816; *McTigue*, 564 F.2d at 679; *Mason*, 383 F.2d at 780; *Auld*, 2014 WL 3696720, at *3; *Donohue*, 410 B.R. 311; *Century Steel*, 56 B.R. at 270; *First Int'l Servs.*, 25 B.R. at 71.

What is Mr. Portillo's argument against the foregoing?  Not much, it turns out.  As noted previously, Mr. Portillo suggests that the Dickensheet Affidavit somehow superseded the definition of the "Property" to be sold in the Sale Motion and the Sale Notice.  As explained above, the Court rejects that argument based on the Undisputed Facts, including the text of the Sale Motion and Sale Notice.  And, in any event, the Court did not authorize the sale of the Unauthorized Sale Property.  So, any purported sale of the Unauthorized Sale Property to Mr. Portillo did not comply with Section 363(b)(1).

Mr. Portillo avoids directly addressing the Trustee's central argument that the purported conveyances to Mr. Portillo are void for violation of Section 363(b)(1).  He cites no contrary legal authority.  Instead, Mr. Portillo builds a strawman argument.  He contends that the Trustee is trying to void the Sale Order through this adversary proceeding.  For example, in the Response, Mr. Portillo states: "Plaintiff's Motion is an impermissible collateral attack on a final sale order"; "When seeking to set aside an order of sale, 'the issue ought to be whether the order was void, not whether it was correct.'"; "'In the interest of finality the concept of setting aside a judgment on voidness grounds is narrowly restricted.'"  Resp. at 5, 7, and 10.  Mr. Portillo also repeatedly refers to the Trustee's alleged failure to meet the requirements of Fed. R. Civ. P. 60(b) (as incorporated by Fed. R. Bankr. P. 9024) which governs "relief from a judgment or order."

Although quite lengthy and convoluted, Mr. Portillo's main argument is based upon a fundamental fallacy which quickly can be dispatched.  In the Complaint, the Trustee has not asked for the Court to void the Sale Order (or any other Court order or judgment).  Similarly, in the Summary Judgment Motion, the Trustee did not request that the Court void the Sale Order (or any other Court order or judgment).  And, in his Reply, the Trustee confirms that "there is no order or judgment that the Trustee seeks relief from."  Reply at 1.  Instead, the Trustee embraces the Sale Order and merely contends that the Sale Order did not authorize the sale of the Unauthorized Sale Property.  He asserts that the Trustee's Deeds (not any Court order or judgment) are void because of non-compliance with Section 363(b)(1).  The Court concurs entirely. Mr. Portillo's main contention is much ado about nothing.  The Court has not been asked to overturn the Sale Order and will not do so.  So, the specter of a "collateral attack" simply disappears.  Mr. Portillo's reference to Fed. R. Civ. P. 60(b) is similarly unavailing.  Fed. R. Civ. P. 60(b) provides:

> On motion and just terms, the court may relieve a party . . .
> from a final judgment, order, or proceeding for the following
> reasons: . . . (4) the judgment is void.

Just as with the fake collateral attack, Fed. R. Civ. P. 60(b) has nothing to do with this dispute because no one has filed a motion asking for relief from a final judgment or order.  The Sale Order constitutes a valid and final order authorizing the Trustee to sell the Authorized Sale Property — but not the Unauthorized Sale Property.  There is no reason to reconsider or reverse the Sale Order.

Mr. Portillo makes only one other equally misguided plea.  He contends that he is a "good faith purchaser" who is protected by Section 363(m).  Resp. at 10-13.  Applying summary judgment procedural principles, there are no Undisputed Facts proving Mr. Portillo's good faith.  But even if Mr. Portillo was determined to be a "good faith purchaser," Section 363(m) simply does not protect him.  That statute provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Simply reading the text dictates that Section 363(m) has no import in this Adversary Proceeding.  There are two obvious and fatal flaws in Mr. Portillo's argument.  First, by its terms, Section 363(m) applies only to reversal or modification of sales that were actually authorized under Section 363(b) or (c).  As the Court has explained, the conveyance of the Unauthorized Sale Property to Mr. Portillo through the Trustee's Deeds was not authorized under Section 363(b)(1) at all.  Second, Section 363(m) applies only to reversal or modification of sales "on appeal."  The Sale Order is not on appeal.  As such, Section 363(m) is not applicable and does not support Mr. Portillo's opposition to the Summary Judgment Motion.

In the end, the Undisputed Facts dictate that the Trustee is entitled to a declaratory judgment determining that the Trustee's Deeds are void because any purported sale to Mr. Portillo failed to comply with Section 363(b)(1).

**D.**      **The Webb Deed Is Valid.**

In the Summary Judgment Motion, the Trustee also requested a declaratory judgment that the Trustee's sale of the Webb Parcel to Mr. Webb is valid as a matter of law.  In the Response, Mr. Portillo does not advance any express independent argument against the validity the Webb Sale Order and Webb Deed.  However, reading between the lines of the Response, Mr. Portillo seems to be contending that the Webb Deed should be voided because the Trustee's Deeds are valid.  Put another way, according to Mr. Portillo, the Trustee already sold the Webb Parcel to Mr. Portillo through the '33 Deed, so any later attempt by the Trustee to "re-sell" the same real estate to Mr. Webb must be improper.

But, Mr. Portillo's argument does not fly.  As set forth above, based on the Undisputed Facts and the Court's legal conclusions, the Trustee's Deeds are void because the Trustee was not authorized to sell the Unauthorized Sale Property (including the Webb Parcel) to Mr. Portillo under Section 363(b)(1).  Since any

purported transfer to Mr. Portillo is invalid, it only stands to reason that the Trustee could sell the Webb Parcel later:  but only in compliance with Section 363(b)(1).

The Undisputed Facts dictate that the Trustee's sale of the Webb Parcel to Mr. Webb complied with Section 363(b)(1).  The Trustee filed the Webb Sale Motion wherein he identified the Webb Parcel by legal description and proposed to sell the Webb Parcel to Mr. Webb in a private sale for the $8,065.14 (which was the amount remaining on the pre-petition Webb Land Contract).  Thereafter, the Trustee prepared the Webb Sale Notice for the proposed sale.  He sent the Webb Sale Motion and the Webb Sale Notice to all creditors.  No party in interest objected.  Accordingly, the Court entered the Webb Sale Order authorizing the Trustee to sell the Webb Parcel to Mr. Webb under the terms outlined in the Webb Sale Motion.  No party appealed the Webb Sale Order.  Then, in accordance with the Court's authorization, the Trustee executed the Webb Deed.  Based on the foregoing, the Trustee's sale of the Webb Parcel to Mr. Webb comported with Section 363(b)(1).  Thus, the Webb Deed is valid and enforceable.

## VII.   Conclusion.

In an effort to narrow the issues for trial, the Trustee has requested summary judgment determining that:  (1) the two Trustee's Deeds void; and (2) the Webb Deed is valid and enforceable.  The Trustee met his summary judgment burden.  Accordingly, for the reasons set forth above, the Court:

GRANTS the Motion for Summary Judgment and, in connection therewith,

DECLARES that the two Trustee's Deeds are VOID, and

FURTHER DECLARES that the Webb Deed is valid and enforceable.

However, the foregoing disposition does not resolve all the issues in this adversary proceeding.  Having determined that the Trustee's Deeds issued by the Trustee to Mr. Portillo are void, questions concerning the proper remedy remain.  For example, two of the parcels of real estate in the '33 Deed were part of the Authorized Sale Property: Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres); and Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres).  But since the remaining five parcels of real estate listed in the '33 Deed (200 acres) were Unauthorized Sale Property, the Court has determined that the entire '33 Deed is void.  The Court did not "partially void" the '33 Deed because it is unclear whether such remedy would be legally permissible and protect Mr. Portillo's interests.  The Court observes that the Trustee has suggested that he is "prepared to issue a pro-rata refund" to Mr. Portillo of $17,250.00 while somehow allowing Mr. Portillo to retain (perhaps by issuance of a new trustee's deed) only Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres) and Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres).  Since Mr. Portillo thought he was buying all seven parcels listed in the '33 Deed, it is uncertain whether he would wish to retain only the two parcels of real estate constituting part of the Authorized Sale

Property.  Perhaps Mr. Portillo may wish instead to obtain a refund on the entire purchase price ($23,000.00).  Or maybe the various parcels have unique attributes (including possible recent improvements) such that the Trustee's proposed "pro-rata refund" is inappropriate.  And furthermore, Mr. Portillo may be entitled to additional damages beyond a refund (such as interest).  Neither the Trustee nor Mr. Portillo provided adequate undisputed facts, legal briefing, and argument on the proper remedies.  So, the Court clarifies that the issue of appropriate remedies remains for trial.  Additionally, Mr. Portillo has asserted a counterclaim against the Trustee for grossly negligent breach of fiduciary duty pursuant to 11 U.S.C. § 704 and 28 U.S.C. § 959.  The counterclaim also has not been adjudicated yet and remains for trial.

DATED this 28th day of January, 2022.

BY THE COURT:

Thomas B. McNamara
United States Bankruptcy Judge