**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re: | |
| KENNETH C. CASEY, INC. | Bankruptcy Case No. 15-20621 TBM<br>Chapter 7 |
| Debtor. | |
| JEFFREY L. HILL, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adv. Pro. No.  21-1070 TBM |
| LIBORIO LOYA PORTILLO, | |
| Defendant. | |

---

### MEMORANDUM OPINION AND ORDER AFTER TRIAL

---

The Debtor, Kenneth C. Casey, Inc. (the "Debtor"), owned numerous parcels of real property located in Alamosa, Costilla, and Saguache counties in rural south-central Colorado.  The Chapter 7 trustee assigned to liquidate the Debtor's estate, Jeffrey L. Hill (the "Trustee"), decided to sell some of the Debtor's real estate holdings.  Such non-ordinary course sales can only be conducted "after notice and a hearing" under Section 363(b)(1) of the Bankruptcy Code.[1]

Toward that end, in 2016, the Trustee filed a "Sale Motion" wherein he specifically identified all the real estate to be sold.  With respect to Costilla County, Colorado, other than unitized lands not at issue in this dispute, the Trustee identified only three 40-acre parcels of real property (120 acres total) belonging to the Debtor. These parcels were located in Sections 11 and 12 of Township 32 South and Range 73 West as part of the Property to be sold (the "Authorized Sale Property").  The Trustee also prepared a "Sale Notice" identifying all the real estate to be sold, including the Authorized Sale Property.  The Trustee sent the Sale Motion and Sale Notice to all creditors.  No parties in interest objected.  Thereafter, the Court entered a "Sale Order" whereby the Court authorized the Trustee to sell the Authorized Sale Property.

---

[1]     All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

Unfortunately, the auctioneer conducted an auction in which it offered to sell only part of the Authorized Sale Property (80 acres instead of 120 acres) and then added to the auction an additional 240 acres of property in Costilla County which were owned by the Debtor, but which were not identified in the Sale Motion or Sale Notice and which the Court did not authorize the Trustee to sell (the "Unauthorized Sale Property"). The Defendant, Liborio Loya Portillo ("Mr. Portillo"), paid the auctioneer $23,000.00 for it all: the 80 acres forming part the Authorized Sale Property and the 240 acres of Unauthorized Sale Property. Afterward, the Trustee (who did not compare the Sale Motion, Sale Notice, and Sale Order against the auction results) issued two trustee's deeds (together, the "Trustee Deeds") purporting to transfer title to all 320 acres (including part of the Authorized Sale Property and the Unauthorized Sale Property) to Mr. Portillo. Later, the Trustee also sold a 40-acre parcel (which was part of the Unauthorized Sale Property subject to one of the Trustee's Deeds) to someone else: Daniel G. Webb ("Mr. Webb").

Years afterward, a dispute surfaced concerning whether Mr. Portillo owns the real estate identified in the two Trustee's Deeds (*i.e.*, part of the Authorized Sale Property and the Unauthorized Sale Property). The Trustee now essentially claims there was a mistake. He filed this lawsuit against Mr. Portillo requesting a declaratory judgment that the two Trustee's Deeds he issued to Mr. Portillo "are void and that Mr. Portillo has no interest in the real estate described [in the two trustee's deed]" because most of the real estate listed in the two Trustee's Deeds was not identified in the Sale Motion and the Sale Notice nor authorized by the Court to be sold in the Sale Order. The Trustee also asked that the subsequent sale to Mr. Webb be determined to be valid and enforceable. Mr. Portillo contested the Trustee's claims. In addition, Mr. Portillo asserted a counterclaim against the Trustee seeking damages arising from the Trustee's "grossly negligent breach of fiduciary duty."

In the lead up to trial, the Trustee filed a "Motion for Summary Judgment" on the Trustee's declaratory judgment claim. Mr. Portillo contested such relief. On January 28, 2022, the Court entered its "Memorandum Opinion and Order Granting Trustee's Motion for Summary Judgment." *Hill v. Portillo (In re Kenneth C. Casey, Inc.)*, 2022 WL 272630 (Bankr. D. Colo. Jan. 28, 2022). The Court ruled that the "two Trustee's Deeds are VOID." Although the Court resolved the main substantive issue through the summary judgment process, two issues remained: (1) "appropriate remedies" for Mr. Portillo; and (2) Mr. Portillo's "counterclaim against the Trustee for grossly negligent breach of fiduciary duty." The Court conducted a two-day trial on the remaining issues. Now, the Court determines that the Trustee must return $23,000.00 (plus interest) to Mr. Portillo since the Trustee's Deeds have already been determined to be void. And, the Court rejects Mr. Portillo's counterclaim against the Trustee. Judgment will enter consistent with this Opinion and Order.

## I.    Jurisdiction and Venue.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and (e) and 28 U.S.C § 157(b).  This is a core proceeding under § 157(b)(2)(A) (a matter concerning administration of the Debtor's bankruptcy estate) and (O) a proceeding affecting the liquidation of the estate.  In *Casey*, 2022 WL 272630, the Court granted summary judgment in favor of the Trustee and against Mr. Portillo on the declaratory judgment claim asserted by the Trustee.  Thereafter, Mr. Portillo filed a "Motion for Leave to Appeal Interlocutory Order to District Court,"[2] pursuant to 28 U.S.C. § 158(a)(3).  The Motion for Leave to Appeal recently was denied.[3]  As such, the Court's jurisdiction to determine the matters raised in this dispute is clear.  But even when the Motion for Leave to Appeal was pending, the Court retained complete jurisdiction to adjudicate this dispute.  *See Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) ("While it is generally true that timely filing of a notice of appeal will divest a court of jurisdiction, this rule presupposes that there is a final judgment from which to appeal . . . .  As there is no right to appeal an interlocutory order, the notice of appeal . . . was simply premature and of no effect."); *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) ("it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case"); *First Korean Christian Church of San Jose v. Kim (In re First Korean Christian Church of San Jose)*, 567 B.R. 575, 578 (Bankr. N.D. Cal. 2017) ("an appeal from an interlocutory order is premature and does not transfer jurisdiction to the appellate court absent leave of that court") (citing *In re Rains*, 428 F.3d 893, 904 (9th Cir. 2005)).  Neither the Trustee nor Mr. Portillo has contested the Court's jurisdiction to adjudicate this Adversary Proceeding.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## II.    Procedural Background.

### A.    The Main Bankruptcy Case.

On September 22, 2015 (the "Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code commencing *In re Kenneth Casey, Inc.*, Case No. 15-20621 TBM (Bankr. D. Colo.) (the "Main Case").[4]  On September 23, 2015, Jeffrey L. Hill was appointed in the Main Case to serve as Trustee for the Debtor's estate.[5]

---

[2]    Docket No. 65 (the "Motion for Leave to Appeal"). The Court will refer to entries in the docket of this Adversary Proceeding by citing to "Docket No. __".  The Court will refer to entries in the main Bankruptcy Case, *In re Kenneth Casey, Inc.*, Case No. 15-20621 (Bankr. D. Colo.), by citing to "Main Case Docket No. __".)

[3]    Docket No. 97.

[4]    Main Case Docket No. 1.

[5]    Main Case Docket No. 4.

B.      **The Adversary Proceeding**.

The Trustee initiated this Adversary Proceeding on April 12, 2021, by filing a "Complaint"[6] against Mr. Portillo, Mr. Webb, and Dickensheet & Associates, Inc. ("Dickensheet & Associates"), seeking declaratory relief pursuant to Fed. R. Bankr. P. 7001. Specifically, the Trustee requested that the Court issue an order declaring that two Trustee's Deeds issued to Mr. Portillo are void because most of the real estate listed in the two Trustee's Deeds was not identified in the Sale Motion and the Sale Notice, and because its sale was not authorized by the Court in the Sale Order. The Trustee also requested declaratory judgment that a trustee's deed issued to Mr. Webb is valid and enforceable. Mr. Webb and Dickensheet & Associates have been dismissed as defendants from this Adversary Proceeding.[7] Mr. Portillo filed an "Answer" in which he denied that the two Trustee's Deeds are void and requested a jury trial.[8] The Court struck Mr. Portillo's jury demand.[9] Thereafter, Mr. Portillo submitted an "Amended Answer and Counterclaim," again denying that the two Trustee's Deeds are void and asserting a counterclaim against the Trustee for "grossly negligent breach of fiduciary duty."[10] The Trustee answered the counterclaim.[11]

On October 11, 2021, the Trustee filed the "Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof,"[12] wherein the Trustee requested summary judgment in his favor on his declaratory judgment claim. Mr. Portillo submitted the "Defendant's Response Opposing Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof."[13]

On January 28, 2022, the Court entered its "Memorandum Opinion and Order Granting Trustee's Motion for Summary Judgment,"[14] wherein the Court granted summary judgment in favor of the Trustee on the main substantive issue. *Casey*, 2022 WL 272630. The Court concluded the Summary Judgment Order as follows:

> In an effort to narrow the issues for trial, the Trustee has requested summary judgment determining that: (1) the two Trustee's Deeds void; and (2) the Webb Deed is valid and enforceable. The Trustee met his summary judgment burden. Accordingly, for the reasons set forth above, the Court:
>
>    GRANTS the Motion for Summary Judgment and, in connection therewith,

---

[6]      Docket No. 1 (the "Complaint").
[7]      Docket Nos. 28 and 39.
[8]      Docket No. 14.
[9]      Docket No. 47.
[10]     Docket No. 56 (the "Amended Answer and Counterclaim").
[11]     Docket No. 57.
[12]     Docket No. 58 (the "Summary Judgment Motion").
[13]     Docket No. 59.
[14]     Docket No. 61 (the "Summary Judgment Order").

DECLARES that the two Trustee's Deeds are VOID, and

FURTHER DECLARES that the Webb Deed is valid and enforceable.

However, the foregoing disposition does not resolve all the issues in this adversary proceeding. Having determined that the Trustee's Deeds issued by the Trustee to Mr. Portillo are void, questions concerning the proper remedy remain. For example, two of the parcels of real estate in the '33 Deed were part of the Authorized Sale Property: Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres); and Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres). But since the remaining five parcels of real estate listed in the '33 Deed (200 acres) were Unauthorized Sale Property, the Court has determined that the entire '33 Deed is void. The Court did not "partially void" the '33 Deed because it is unclear whether such remedy would be legally permissible and protect Mr. Portillo's interests. The Court observes that the Trustee has suggested that he is "prepared to issue a pro-rata refund" to Mr. Portillo of $17,250.00 while somehow allowing Mr. Portillo to retain (perhaps by issuance of a new trustee's deed) only Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres) and Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres). Since Mr. Portillo thought he was buying all seven parcels listed in the '33 Deed, it is uncertain whether he would wish to retain only the two parcels of real estate constituting part of the Authorized Sale Property. Perhaps Mr. Portillo may wish instead to obtain a refund on the entire purchase price ($23,000.00). Or maybe the various parcels have unique attributes (including possible recent improvements) such that the Trustee's proposed "pro-rata refund" is inappropriate. And furthermore, Mr. Portillo may be entitled to additional damages beyond a refund (such as interest). Neither the Trustee nor Mr. Portillo provided adequate undisputed facts, legal briefing, and argument on the proper remedies. So, the Court clarifies that the issue of appropriate remedies remains for trial. Additionally, Mr. Portillo has asserted a counterclaim against the Trustee for grossly negligent breach of fiduciary duty pursuant to 11 U.S.C. § 704 and 28 U.S.C. § 959. The counterclaim also has not been adjudicated yet and remains for trial.

*Id*. at *18.  Thus, the issues of appropriate remedies and Mr. Portillo's counterclaim against the Trustee for grossly negligent breach of fiduciary duty remained after the Summary Judgment Order.  The Court refers to such topics hereinafter as the two "Remaining Issues."

On February 11, 2022, Mr. Portillo filed the Motion for Leave to Appeal, whereby Mr. Portillo sought to appeal the Summary Judgment Order.  The Motion for Leave to Appeal was pending when trial on the Remaining Issues was scheduled to commence.  Since Mr. Portillo did not secure authorization to appeal the Summary Judgment Order on an interlocutory basis, the parties proceeded toward trial on the Remaining Issues.  The Trustee contended that the Court retained jurisdiction to adjudicate the Remaining Issues.[15]  Mr. Portillo presented a very ambiguous position but did not contest the Court's jurisdiction to conduct a trial on the Remaining Issues.[16]  Neither the Trustee not Mr. Portillo requested that the Court defer or hold the Remaining Issues in abeyance pending a decision on the Motion for Leave to Appeal.  On April 14, 2022, the Trustee and Mr. Portillo presented the Court with extremely cursory "Stipulations of Facts and Exhibits."[17]  Thereafter, the Court presided over a "Final Pre-Trial Conference."[18]

The Court conducted a two-day in-person trial on the Remaining Issues on April 28 and 29, 2022.[19]  The Court received testimony from four witnesses:  the Trustee; Mr. Portillo (who testified in Spanish with the assistance of a certified interpreter, David Lauman); Christine Dickensheet (the auctioneer); and Yesenia Loya (Mr. Portillo's wife).  The Court admitted into evidence the Trustee's Exhibits 1-12 and Mr. Portillo's Exhibits N-P.  The Court also took judicial notice of Main Case Docket No. 7.  After the completion of the evidence, the Court received comprehensive closing arguments and took the dispute under advisement.  In the interim since the end of the trial, the Court has considered the testimony of the witnesses, re-reviewed the exhibits, and assessed the applicable law.  Just yesterday, while the Court was finalizing this ruling, the United States District Court for the District of Colorado issued a ruling denying the Motion for Leave to Appeal.[20]  As such, the Court's jurisdiction to determine the Remaining Issues is clear.

### III.     Findings of Fact.

Based upon the evidence presented at the trial, including the testimony, admitted exhibits, and Stipulated Facts, the Court makes the following findings of fact under Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052.

---

[15]        Docket No. 86.
[16]        Docket No. 88.
[17]        Docket No. 81.
[18]        Docket No. 82.
[19]        Docket Nos. 90 and 91.
[20]        Docket No. 97.

A.      **The Trustee, the Debtor, and the Debtor's Bankruptcy Case**.

The Trustee is an attorney and long-standing Chapter 7 Panel Trustee in United States Trustee Region 19.  He received his Juris Doctorate degree from Loyola University and a Bachelor of Arts (History) degree from Tulane University.  The United States Trustee appointed the Trustee as a Chapter 7 Panel Trustee in 1987.  In the last 34 years, the Trustee has served as a Chapter 7 Trustee in many thousands of Chapter 7 bankruptcy cases in Colorado.  During such time, he has engaged in extensive bankruptcy training and has been a member of various professional organizations in the bankruptcy field.  In addition to serving as a Chapter 7 Trustee, the Trustee also has engaged in private legal practice.  Now at the end of his career, the Trustee is in the process of retiring from both private legal practice and as a Chapter 7 Trustee.  He is not accepting any new Chapter 7 Trustee assignment; however, he is "winding up" the remaining cases in which he serves as Chapter 7 Trustee, including the Main Case.

The Debtor, Kenneth C. Casey, Inc., is a corporation which was engaged in the business of buying and selling real estate in rural south-central Colorado.  Many of the Debtor's transactions involved land installment contracts.  The Debtor's principal, Kenneth C. Casey, died.  Shortly thereafter, the board of directors of the Debtor caused the corporate Debtor to file for protection under Chapter 7.  The United States Trustee appointed the Trustee to serve as the Chapter 7 Trustee for the estate of the Debtor in 2015.  The Debtor's corporate records (including real property records) were in disarray when the Trustee assumed his role.

Most of the Trustee's career work as a Chapter 7 trustee has involved "no-asset" bankruptcies.  However, the Debtor's case was an "asset case."  In terms of the monetary value at issue, the Trustee characterized the Debtor's case as "middle-of-the-road" for an "asset case."  The Trustee concluded that the Debtor owned or had interests in hundreds of parcels of real estate and land installment contracts.  Some of the counterparties to certain land installment contracts were making payments to the Debtor when the Main Case was initiated.  The Trustee characterized the Debtor's bankruptcy as somewhat complex because of the disarray in records and amount of real estate.

The Trustee did not operate the Debtor as a business or seek an order to do so pursuant to Section 721.  Instead, the Trustee focused on liquidating assets of the Debtor, including the Debtor's various real estate holdings, in non-ordinary course transactions.  To assist in identifying the Debtor's real estate, the Trustee engaged Allpine Title.

B.      **The Transactions with Mr. Portillo**.

      1.      **The Sale Motion and Sale Order**.

On July 14, 2016, the Trustee filed the "Trustee's Combined Motion to Sell Real Property of the Estate at Public Auction; to Employ Dickensheet & Associates, Inc. as

Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Motion").[21]  In the Sale Motion, the Trustee sought authority to sell certain real property of the Debtor's estate at public auction, namely "vacant land located in Colorado and more specifically identified in the attached <u>Exhibit 1</u> (the "Property")."[22]  Exhibit 1 to the Sale Motion identified the specific real estate to be sold as follows:[23]

<u>Saguache County</u>

| T-R | Section | 1/4 |
|-----|---------|-----|
| 41-9 | 11 | NE4SW4 |

<u>Alamosa County</u>

El Valle Del Sol Estates Tract 18

| T-R | Section | 1/4 |
|-----|---------|-----|
| 38-11 | 22 | NWSW |
| 38-11 | 22 | SWSW |
| 38-11 | 22 | SESW |

<u>Costilla County</u>

| T-R | Section | 1/4 |
|-----|---------|-----|
| 32-73 | 11 | SESE |
| 32-73 | 12 | SWSW |
| 32-73 | 12 | SESW |

San Luis Valley Ranches
Unit 20, Block 10, Lot 33
Unit 20, Block 33, Lot 4
Unit 20, Block 37, Lot 12
Unit 20, Block 39, Lot 3
Unit 20, Block 51, Lot 6

According to the Trustee, the foregoing list of the real estate to be sold was developed from information provided by Allpine Title, a title company that the Trustee engaged.

In support of the part of the Sale Motion requesting authorization for the Trustee to employ Dickensheet & Associates as auctioneer, the Trustee submitted an "Affidavit of Auctioneer/Liquidator" (the "Dickensheet Affidavit") executed by Christine Dickensheet.[24]  In the Dickensheet Affidavit, Ms. Dickensheet attested to a number of facts in support of her company's employment, providing background information about the company and her experience, and stating that neither she nor her employees have any connection to the Debtor, creditors, parties in interest and attorneys in the case, among other things.  Ms. Dickensheet also stated:

---

[21]     Ex. 1; Main Case Docket No. 44.
[22]     *Id.*
[23]     *Id.*
[24]     *Id.*

8

10. It is my understanding that the assets to be sold in the within case is undeveloped land with the legal description of:

- Schedule 70365010, S.L.V.R. UNIT 20 BLK 39 LOT 3, COSTILLA COUNTY COLORADO
- Schedule 70364580, S.L.V.R. UNIT 20 BLK 37 LOT 12, COSTILLA COUNTY, COLORADO
- Schedule 70363810 S.L.V.R. UNIT 20 BLK 33 LOT 4, COSTILLA COUNTY, COLORADO
- Schedule 70361170 S.L.V.R. UNIT 20 BLK 10 LOT 33, COSTILLA COUNTY, COLORADO
- Schedule 70367400, S.L.V.R. UNIT 20 BLK 51 LOT 6, COSTILLA COUNTY, COLORADO
- Schedule 11000273 (QCD 405-971) SE4SE4 SEC 11-32-73 CONT. 40 AC FROM SCHEDULE #11000272, COSTILLA COUNTY, COLORADO
- Schedule 11000272 SW4SE4 & S2SW4 SEC 11-32-73 (120 AC) FROM SCH #11000270 S2S2 SEC 12-32-73 (160 AC) FROM SCHEDULE #11000270, COSTILLA COUNTY, COLORADO
- Schedule 45000470 SE4SW4 OF SEC 32-31-73 (LOT 32-15) FROM SCHEDULE #40000640 (DC 405-616)
- Parcel 528322300329 NW4SW4 22-38-11 40AC M/L WD REC #300866 1-23-01 ALAMOSA COUNTY, COLORADO
- Schedule 485911300175  NE1/4SW1/4 11-41-9 SAGUACHE COUNTY, COLORADO
- Parcel 528322300330  SW4SW4 22-38-11 40A/C M/L WD REC #300866 1-23-01, ALAMOSA COUNTY, COLORADO
- Parcel 528322300331 SE4SW4 22-38-11 40AC M/L WD REC #300866 1-23-01, ALAMOSA COUNTY, COLORADO
- Parcel 528334404027 EL VALLE DEL SOL ESTATES TRACT 18, ALAMOSA COUNTY, COLORADO

The Court refers to the foregoing list as the "Affidavit List." The Affidavit List contains additional parcels and acreage beyond the property defined in the Sale Motion as being offered for sale.[25] Dickensheet & Associates prepared the Affidavit List after doing "some legal research on it to try to get the legal descriptions on it." Ms. Dickensheet thought the Affidavit List matched what the Trustee's attorney had sent to her. But, it did not. Ms. Dickensheet testified that she was not certain where she obtained the information on the Affidavit List. However, she explained that many counties have preferences regarding how legal descriptions are identified. She believes that Costilla County prefers "schedule numbers." So, she or someone at Dickensheet & Associates likely did additional research to try to add schedule numbers.

Contemporaneously with filing the Sale Motion, the Trustee prepared, filed, and served a "Notice of Trustee's Combined Motion to Sell Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc. as Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Notice").[26] The Sale Notice stated, in relevant part:

---

[25]   *Id.*; *compare* Sale Motion Ex. 1 with Dickensheet Affidavit.
[26]   Ex. 2; Main Case Docket No. 46.

YOU ARE HEREBY NOTIFIED that Jeffrey L. Hill, Chapter 7 Trustee ("Trustee"), has filed a Combined Motion to Sell Real Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc. as Auctioneer; and to Compensate Auctioneer Following Sale ("Combined Motion") and seeks the following relief:

Trustee seeks an order authorizing the estate to sell at a public auction certain real property located in Colorado free and clear of any interest in such property of an entity other than the estate, except for the Permitted Liens (as define din the Combined Motion). The property is identified below (the "Property"):

Saguache County

| T-R | Section | 1/4 |
|-----|---------|-----|
| 41-9 | 11 | NE4SW4 |

Alamosa County
El Valle Del Sol Estates Tract 18

| T-R | Section | 1/4 |
|-----|---------|-----|
| 38-11 | 22 | NWSW |
| 38-11 | 22 | SWSW |
| 38-11 | 22 | SESW |

Costilla County

| T-R | Section | 1/4 |
|-----|---------|-----|
| 32-73 | 11 | SESE |
| 32-73 | 12 | SWSW |
| 32-73 | 12 | SESW |

San Luis Valley Ranches
Unit 20, Block 10, Lot 33
Unit 20, Block 33, Lot 4
Unit 20, Block 37, Lot 12
Unit 20, Block 39, Lot 3
Unit 20, Block 51, Lot 6

The Combined Motion seeks authority to employ Dickensheet & Associates, Inc. as auctioneers to conduct a public auction of the Property at a reasonable and customary date and time at 1501 West Wesley Avenue, Denver, Colorado. The Combined Motion further requests court authorization to pay Dickensheet & Associates, Inc. a commission equal to ten percent (10%) of the gross sales proceeds, plus all necessary costs and expenses incurred in preparing and marketing the Property for sale, not to exceed a maximum of $1,000 per individual property, from the proceeds of sale.

The definition of "Property" in the Sale Notice was exactly the same as the definition of "Property" in the Sale Motion. [27] No reference was made to the Dickensheet Affidavit or the Affidavit List in the Sale Notice.

Based on the foregoing, it is apparent that there is a discrepancy between the definition of "Property" in the Sale Motion and the property described in the Affidavit List. Other than repeatedly acknowledging a "mistake" made by the Trustee, and/or his legal counsel, and/or Dickensheet & Associates, the Trustee had no real explanation for the discrepancy between the "Property" in the Sale Motion and the Affidavit List. The

---

[27]     *Compare* Sale Motion and Sale Notice (Exs. 1 and 2).

Trustee candidly acknowledged his final responsibility to ensure the accuracy and consistency of all documents filed with the Court.

On July 14, 2016, the Trustee served all creditors with the Sale Motion and Sale Notice as reflected on a "Certificate of Service."[28]  The Sale Notice was the only notice of sale transmitted to creditors and parties in interest pertaining to the proposed sale.

No creditor or party in interest objected to the Sale Motion.  Therefore, on August 12, 2016, the Court entered an "Order Authorizing Trustee to Sell Real Property of the Estate at Public Auction; for Employment of Dickensheet & Associates, Inc., as Auctioneer; and to Compensate Auctioneer Following Sale" (the "Sale Order").[29] Therein, the Court authorized the Trustee to auction the "Property (as defined in the [Sale] Motion)."[30]  More specifically, the Sale Order stated, in relevant part:

ORDERS that the Motion is granted and approved.

The Court FURTHER ORDERS as follows:

1.      Trustee is authorized to employ and retain Dickensheet & Associates, Inc. for the purpose of conducting a public auction of the Property (as defined in the Motion) in accordance with the terms set forth in the Motion;

2.      Trustee is authorized pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code to convey to the winning bidders of the public auction all of the bankruptcy estate's right, title, and interest in and to the Property, or any portion thereof, free and clear of any liens, claims or encumbrances, except for the Permitted Exceptions (as defined in the Motion) . . . .

Thus, with respect to Costilla County, the only three 40-acre parcels of vacant land that the Court authorized the Trustee to sell were:

•      Township 32[31] Range 73[32] Section 11 SE1/4SE1/4 (40 acres);

---

[28]      Ex. 3; Main Case Docket No. 47.

[29]      Ex. 4; Main Case Docket No. 55.

[30]      *Id.*

[31]      In the Sale Motion, the Trustee did not identify the direction associated with "Township 32."  The only "Township 32" located in Costilla County, Colorado is Township 32 South.  Throughout this decision, and as the parties have, the Court will use the shorthand "Township 32."  However, for clarity, "Township 32" really means Township 32 South.

[32]      In the Sale Motion, the Trustee did not identify the direction associated with "Range 73." However, the correct Range is Range 73 West.  Throughout this decision, and as the parties have, the Court will use the shorthand "Range 73."  However, for clarity, "Range 73" really means Range 73 West.

- Township 32 Range 73 Section 12 SW1/4SW1/4 (40 acres); and

- Township 32 Range 73 Section 12 SE1/4SW1/4 (40 acres).

The Court will refer to the foregoing three 40-acre parcels (which together total 120 acres) as the "Authorized Sale Property."[33]  In the Sale Order, the Court also authorized the Trustee to employ and retain Dickensheet & Associates for the purpose of conducting a public auction of the Authorized Sale Property (and the other property defined in the Sale Motion).  However, in the Sale Order, the Court did not refer to the Dickensheet Affidavit nor the expanded list of real estate parcels contained in the Affidavit List.

## 2.   <u>The Auction and the Trustee's Deeds.</u>

In any event, Dickensheet & Associates proceeded toward an auction.  Ms. Dickensheet prepared a newspaper advertisement describing various property to be auctioned on August 27, 2016 as follows: "Vehicles, Buses, Trailers, Front Loaders, Landscaping Eq., Firearms, Undeveloped Lots & More."[34]  Most of the property to be auctioned was unrelated to the Debtor.  For example, the newspaper advertisement described various buses to be auctioned "on behalf of Denver Public Schools."[35]  However, the newspaper advertisement roughly tracked (but not exactly) the Affidavit List.  Dickensheet & Associates did not provide the newspaper advertisement to the Trustee for approval.  Dickensheet & Associates placed the newspaper advertisement with Colorado Community Newspapers and also included similar information on its internet website.

Mr. Portillo has regularly attended Dickensheet & Associates auctions for about 15 years.  In prior auctions, he mainly purchased construction equipment.  He saw the newspaper advertisement for the auction on the internet and was interested in the real estate because he "liked them."  Mr. Portillo did no research or due diligence regarding the real estate before the auction.  He did not visit the real estate either.  But, he testified that "I liked them to conduct --- some business that I want to do over there."  The Court assesses such testimony as quite suspect.  Mr. Portillo never explained what "business" he wanted to conduct on the real estate, which is barren range land.

In any event, about two weeks after the entry of the Sale Order, on August 27, 2016, Dickensheet conducted a public auction at its premises.[36]  Mr. Portillo attended the auction in person.  At the auction, Dickensheet made available to all bidders a

---

[33]     The Court also authorized the sale of five unitized lots located in San Luis Valley Ranches, Costilla County, Colorado.  However, that authorization is not relevant to the current dispute. So, the Court makes no further reference to such other Costilla County lots.
[34]     Ex. 5 at 6; Main Case Docket No. 58 at 6.
[35]     *Id.*
[36]     Ex. 5; Main Case Docket No. 58.

catalog listing all the property, including real estate, to be auctioned.  Regarding real estate, the catalog listed property descriptions and tax information.  The catalog was not admitted into evidence.  Dickensheet & Associates also advised Mr. Portillo that the real estate to be auctioned was "part of a bankruptcy."

According to the Report of Sale prepared by Dickensheet & Associates and filed with the Court, Mr. Portillo was the successful bidder for 320 acres of land in Costilla County, Colorado, consisting of Lot No. 3507 (280 acres purchased for $20,500.00) and Lot No. 3508 (40 acres purchased for $2,500.00).[37]  Mr. Portillo paid the aggregate amount of $23,000.00 at the auction by check.  He testified that he also signed a contract for the purchase.  However, no such contract was introduced into evidence.  Since the Authorized Sale Property consists of only 120 acres, it is apparent that Dickensheet offered, and Mr. Portillo purported to buy, much more real estate (320 acres) than that listed in the Sale Motion and Sale Notice and authorized by the Court to be sold in the Sale Order.

Following the auction, using the descriptions supplied by Ms. Dickensheet in the Report of Sale, the Trustee prepared two Trustee's Deeds which were issued to Mr. Portillo.[38]  The Trustee had a standard form for trustee's deeds and he simply "cut and pasted" the descriptions of real estate from the Report of Sale.  When he prepared the Trustee's Deeds, the Trustee did not realize that the descriptions in the Report of Sale did not match the Authorized Sale Property in the Sale Order.

The first trustee's deed is dated October 4, 2016, signed by the Trustee, and was recorded by the Costilla County Recorder on April 20, 2017, at Reception No. 291633 (the "'33 Deed").[39]  The '33 Deed corresponds with Lot No. 3507 and purports to transfer seven 40-acre parcels (280 acres total) of real estate from the Debtor's Estate to Mr. Portillo.  Only two 40-acre parcels (80 acres total) identified in the '33 Deed were listed in the Sale Motion and Sale Notice and authorized by the Court to be sold in the Sale Order (and were thus part of the Authorized Sale Property).  The second trustee's deed is dated October 4, 2016, signed by the Trustee, and was recorded by the Costilla County Recorder on April 20, 2017 at Reception No. 291634 (the "'34 Deed").[40]  The '34 Deed corresponds with Lot No. 3508 and purports to transfer one 40-acre parcel of real estate from the Debtor's Estate to Mr. Portillo, which real estate was not listed in the Sale Motion or Sale Notice and not authorized by the Court to be sold in the Sale Order (and was thus not part of the Authorized Sale Property).  In executing the '33 Deed and the '34 Deed, the Trustee assumed erroneously that the definition of the Property from the Sale Motion and the Sale Order was reflected in the '33 Deed and '34 Deed.  The Court will sometimes refer to the '33 Deed and the '34 Deed, collectively, as the "Trustee's Deeds."  After he executed the Trustee's Deeds, the Trustee forwarded them to Dickensheet & Associates.  Then, Ms. Dickensheet sent the Trustee's Deeds to Mr.

---

[37]   *Id*.
[38]   Exs. 6 and 7.
[39]   Ex. 6.
[40]   Ex. 7.

Portillo.  Several months after Mr. Portillo received the Trustee's Deeds, his wife (Yesenia Loya) filed the Trustee's Deeds with the Costilla County Recorder.

The following chart lists all eight of the parcels of real estate included in the Trustee's Deeds and also contains columns identifying whether each of the eight parcels of real estate was listed in the Sale Motion and Sale Notice as well as authorized to be sold per the Sale Order:

| Parcel[41] | Legal Description (All 40 Acres Each in Range 73W) | Trustee Deed No. and Auctioneer Lot No. | Identified in Sale Motion and Sale Notice | Authorized to Be Sold by Sale Order |
|---|---|---|---|---|
| 1 | SW1/4SW1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 2 | SE1/4SW1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 3 | SW1/4SE1/4 Township 32S Section 11 | '33 Deed Lot 3507 | No | No |
| 4 | SW1/4SW1/4 Township 32S Section 12 | '33 Deed Lot 3507 | Yes | Yes |
| 5 | SE1/4SW1/4 Township 32S Section 12 | '33 Deed Lot 3507 | Yes | Yes |
| 6 | SW1/4SE1/4 Township 32S Section 12 | '33 Deed Lot 3507 | No | No |
| 7 | SE1/4SE1/4 Township 32S Section 12 | '33 Deed Lot 3507 | No | No |
| 8 | SE1/4SW1/4 Township 31S Section 32 | '34 Deed Lot 3508 | No | No |

So, only Parcel Nos. 4 and 5 are part of the Authorized Sale Property identified in the Sale Motion and Sale Notice, and are the only parcels authorized to be sold by the Sale Order.  Thus, all the other six parcels (Parcel Nos. 1-3 and 6-8) were not identified in the Sale Motion and Sale Notice and the Court did not authorize sale through the Sale Order (the "Unauthorized Sale Property").

---

[41]     The "Parcel Nos." are used in the generic sense of referring to parcels of real property and numbered only for purposes of convenience for this Order.  The "Parcel Nos." do not refer to parcel numbers assigned in real property records.

3.   **The Trustee's Mistakes**.

This dispute involves numerous mistakes.  The "Property" described in the Motion was different than the real estate identified in the Affidavit Listing.  The real estate auctioned by Dickensheet & Associates at the auction was not the Authorized Sale Property the Court actually authorized to be sold in the Sale Order.  The Trustee's Deeds issued to Mr. Portillo also were inconsistent with the Sale Order.  So, there was a series of mistakes.  The Trustee, in his testimony repeatedly acknowledged that errors occurred and that he bore responsibility for the mistakes.  He stated:

> •      I freely admit that there was a mistake made . . . there's no question about that.  If I had looked at it more carefully, I might have questioned that [the difference between the Property described in the Sale Order and the Affidavit Listing] . . . . [T]hat appears to be a mistake that should have been caught.  I freely admit that.
>
> •      I obviously did not do it [review the difference between the Property described in the Sale Order and the Trustee's Deeds] as meticulously as I probably should have.  And, again, I'm not denying that there were errors made.
>
> •      I should have been more meticulous in . . . comparing what was approved by the Court to be sold [the Sale Order] compared to what Dickensheet [& Associates] ultimately auctioned off to avoid that mistake.  And, you know, what can I say.  It was an error.  It was an oversight.  It was somewhat sloppy.  And I definitely regret it.

Although the Trustee testified that Dickensheet & Associates had erred in the first instance, he confirmed: "Ultimately, I recognize my error as well."

C.   **The Transaction with Mr. Webb**.

On July 20, 2018, more than a year after the recording of the Trustee's Deeds, the Trustee filed a "Motion to Sell Real Estate (Costilla 12-13) Pursuant to 11 U.S.C. § 363(b)" (the "Webb Sale Motion").[42]  Through the Webb Sale Motion, the Trustee proposed to sell a single 40-acre parcel of land in Costilla County, Colorado:  Township 32 Range 73 Section 12 SE1/4SE1/4, to Mr. Webb pursuant to the Webb Land Contract into which the Debtor and Mr. Webb had entered prior to the Petition Date.[43]  The Court refers to this parcel of real property as the "Webb Parcel."  The Webb Parcel corresponds to part of the Unauthorized Sale Property (Parcel No. 7) purportedly sold to Mr. Portillo and conveyed to him through the '33 Deed.

---

[42]      Ex. 8; Main Case Docket No. 148.
[43]      The Webb Land Contract is attached to the Webb Sale Motion as part of Exhibit 8.

Notice of the Webb Sale Motion was provided to creditors and parties in interest in the Main Case (the "Webb Sale Notice").[44]  No party objected to the Webb Motion to Sell.[45]  Accordingly, the Court granted the Webb Sale Motion on August 16, 2018 (the "Webb Sale Order").[46]  After entry of the Webb Sale Order, the Trustee executed another trustee's deed conveying the Webb Parcel to Mr. Webb (the "Webb Deed").[47]  At the time that he executed the Webb Deed, the Trustee did not realize that the Webb Parcel had been listed in the '33 Deed.  The Webb Deed was recorded (about 16 months after the Webb Sale Order) with the Costilla County Recorder on January 14, 2020, at Reception No. 302065.[48]

**D.    The Transaction with Mr. Cowan.**

During the trial in this Adversary Proceeding, Mr. Portillo offered into evidence three exhibits pertaining to Roy G. Cowan: (1) a "Request for Full Release of Deed of Trust and Release," executed on February 7, 2020;[49] (2) a "Deed of Trust," executed on October 15, 2007;[50] and (3) a "Motion to Approve Settlement Agreement Between Jeffrey L. Hill, Chapter 7 Trustee, and R.G. Cowan, LL," dated April 6, 2018.[51]  The Trustee either did not assert any objections to the admission of such exhibits or withdrew such objections.  Accordingly, the Court admitted such materials into evidence.  However, having reviewed the exhibits, the Court determines that they are irrelevant.  Accordingly, the Court makes no further reference to such materials.

**E.    Evidence Pertaining to Mr. Portillo's Damages.**

During the trial, Mr. Portillo presented virtually no admissible evidence concerning any damages he may have suffered from the transactions with the Trustee except that Mr. Portillo paid $23,000.00 to the Trustee in exchange for the Trustee's Deeds which the Court already determined are void.

Mrs. Loya (Mr. Portillo's wife), described the real estate covered by the Trustee's Deeds as follows:

> It's pretty much bare land.  They're not even paved or anything.  It's just dirt.  And, at the beginning, it was hard to find . . . .

The real estate is "vacant land."  It has no water.  There are no utilities (such as water, electricity, or natural gas) on the real estate although there is some electricity "nearby."  Mr. Portillo and his wife have made no improvements to the real estate.  They

---

[44]     Exs. 9 and 10; Main Case Docket Nos. 149 and 150.
[45]     *See, generally*, Main Case Docket.
[46]     Ex. 11; Docket No. 159.
[47]     Ex. 12.
[48]     *Id.*
[49]     Ex. N.
[50]     Ex. O.
[51]     Ex. P; Main Case Docket No. 126.

considered putting up a fence; but they did not.  There are no permanent structures on the real estate:  just some trash, including some scrap metal and abandoned trailers.  Mr. Portillo was "thinking of removing" the scrap metal and trailers; but, he did not.

Since the Auction in 2016, Mr. Portillo has visited the real estate described in the Trustee's Deeds approximately 15-20 times.  Mr. Portillo and his family have camped there and had some barbeques on the real estate.  Other than those sporadic visits, Mr. Portillo has made no use of the real estate.  Mr. Portillo testified that "[w]e intend to plant crops there, do something."  But, he has done nothing.  No crops have been planted — perhaps because there is no water.  Mr. Portillo did not testify that he has any farming experience.  No evidence was presented to establish that the real estate is suitable for agriculture.

The Court received no evidence of the value of the real estate described in the Trustee's Deeds.[52]  Mr. Portillo did not obtain an appraisal.  Regarding taxes, Ms. Loya suggested that she or her husband paid property taxes to Costilla County for the real estate described by the Trustee's Deeds.  Although the testimony was very unclear, the Court accepts it.  However, the Court received no evidence of how much was allegedly paid and when.  In sum, the Court received no evidence that Mr. Portillo has suffered any damage at all from the Trustee's Deeds being void (except for his payment of $23,000.00 at the auction on August 26, 2016).

## VI.    Legal Analysis and Conclusions of Law.

Through the Summary Judgment Order, the Court already has determined that the Trustee's Deeds executed by the Trustee and provided to Mr. Portillo "are void because any purported sale to Mr. Portillo failed to comply with Section 363(b)(1)."  *Casey*, 2022 WL 272630, at *17.  The Court also decided that "the Webb Deed is valid and enforceable." *Id.* at *18.  Having already adjudicated the main disputed issue in this Adversary Proceeding, the Court need not re-determine the same issue.  Instead, the Court refers to, incorporates, and adopts again, the entire "Legal Analysis and

---

[52]    During the trial, Mr. Portillo's counsel did ask Mr. Portillo:  "In your personal opinion, how much do you believe the property is worth?"  The question drew an evidentiary objection from the Trustee's counsel who argued that such opinion testimony was improper because Mr. Portillo is not an expert in real estate valuation and does not own the real estate described in the Trustee's Deeds.  Mr. Portillo's counsel seemed to accept that Mr. Portillo was not an expert in real estate valuation but stated:  "You don't have to be an expert to have a value in your own head for your own land."  In ruling on the evidentiary objection, the Court accepted the premise that property owners may be permitted to testify concerning the value of their own land.  *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213-17 (10th Cir. 2011) (recognizing that under the Federal Rules of Evidence and Colorado common law a landowner may testify to the value of their property); *In re Marriage of Plummer*, 709 P.2d 1388, 1389 (Colo. App. 1985) ("An owner may state his opinion of the value of his own property without being qualified as an expert witness.").  However, in the Summary Judgment Order issued three months before the trial, the Court already determined that the Trustee's Deeds were void.  Accordingly, Mr. Portillo is not the owner of the real estate described in the Trustee's Deeds.  Thus, the Court sustained the evidentiary objection.  Notably, Mr. Portillo's counsel presented no proffer of what value Mr. Portillo would have attributed to the real estate described in the Trustee's Deeds if he had been permitted to testify.  And, Mr. Portillo presented no other evidence of value at all (such as testimony from an expert or an appraisal).

Conclusions" set forth in *Casey*, 2002 WL 272630, at *11-19.  Just as in the summary judgment context, the evidence at trial dictates that the Trustee's Deeds are void and the Webb Deed is valid and enforceable.

So that leaves only the two Remaining Issues identified in the Summary Judgment Order:  (1) appropriate remedies given that the Trustee's Deeds are void; and (2) Mr. Portillo's counterclaim against the Trustee for grossly negligent breach of fiduciary duty. The Court starts with the counterclaim and ends with the remedies.

## A.   The Trustee Is Not Liable to Mr. Portillo for Grossly Negligent Breach of Fiduciary Duty.

In his Amended Answer and Counterclaim, Mr. Portillo asserted a single counterclaim against the Trustee titled:  "Grossly Negligent Breach of Fiduciary Duty Pursuant to 11 U.S.C. § 704 and 28 U.S.C. § 959 — Trustee Jeffrey L. Hill, Chapter 7 Trustee In His Official Capacity."  So, Mr. Portillo apparently is not suing the Trustee personally, but only in his "official capacity."  After identifying the title of the counterclaim, Mr. Portillo repeatedly asserted that the Trustee "failed to fulfill his fiduciary duties" and was "grossly negligent as to his fiduciary duties."[53]  Mr. Portillo also references the Trustee's alleged failure to comply with 11 U.S.C. § 704 and 28 U.S.C. § 959.  The Court has had great difficulty understanding the nature of Mr. Portillo's sole counterclaim.  But during closing argument, counsel for Mr. Portillo argued repeatedly that the tort of "grossly negligent breach of fiduciary duty" is a claim created by "federal common law," not State law (and particularly not the law of the State of Colorado).

### 1.   There Is No Federal Common Law Claim for Grossly Negligent Breach of Fiduciary Duty.

Although Mr. Portillo has been very clear in asserting that his counterclaim is a creature of federal common law, he failed to explain how federal common law provides for such a cause of action.  After all, "federal common law constitutes an 'unusual exercise of lawmaking which should be indulged . . . only when there is some significant conflict between some federal policy or interest and the use of state law.'"  *FDIC v. AmFin Fin. Corp.* 757 F.3d 530, 535 (6th Cir. 2014) (citations omitted).  The Supreme Court recently explained the very narrow and limited role of federal common law in another bankruptcy case:  *Rodriguez v. FDIC*, 140 S. Ct. 713 (2020).  Justice Gorsuch held (on behalf of a unanimous Supreme Court):

> Judicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's "legislative Powers" in Congress and reserves most other regulatory authority to the States.  *See* Art. I, § 1; Amdt. 10.  As this Court has put it, there is "no federal general common law."  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) . . . .  Instead, only limited areas exist is

---

[53]   Docket No. 56 ¶¶ 82-87.

which federal judges may appropriately craft the rule of
decision.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729
(2004).  These areas have included admiralty disputes and
certain controversies between States.

*Rodriguez*, 140 S. Ct. at 717 (rejecting application of federal common law to bankruptcy
dispute).

Mr. Portillo has not addressed the import of *Rodriguez*, 140 S. Ct. 717.  Instead,
in both the Second Amended Answer and Counterclaim and during closing argument,
Mr. Portillo referred the Court to a single non-binding decision as the source of the
federal common law of "grossly negligent breach of fiduciary duty":  *In re Cont'l Coin
Corp.,* 380 B.R. 1 (Bankr. C.D. Cal. 2007), *aff'd* 2009 WL 2589635 (C.D. Cal. Aug. 21,
2009).  The Court finds *Continental Coin* to be inapposite.  The *Continental Coin* opinion
never mentions the term "federal common law."  And, furthermore, it does not recognize
a tort of "grossly negligent breach of fiduciary duty."  Indeed, that phrase never features
in the *Continental Coin* case at all.

In *Continental Coin*, "the principal remaining creditor" of a debtor's bankruptcy
estate sought permission from the bankruptcy court to sue a Chapter 11 trustee
appointed to liquidate the debtor's estate under a confirmed Chapter 11 plan.  The
Chapter 11 plan required advance court approval for such lawsuits.  In his proposed
complaint, the creditor asserted that the trustee had not exercised her business
judgment in a reasonable fashion during the bankruptcy case.  The creditor then
asserted claims (presumably under State law) for legal malpractice, negligence, gross
negligence, and breach of fiduciary and statutory duty.

The principal issue addressed in *Continental Coin* was whether the Chapter 11
trustee was immune.  Relying mainly on Ninth Circuit precedent, the bankruptcy court
held:

I find that the law of the Ninth Circuit excuses a trustee from
simple or ordinary negligence, but does not protect him from
actions that are deemed to be gross negligence or for acts of
intentional wrongdoing.

*Id*. at 15.  The *Continental Coin* holding on immunity does not squarely align with Tenth
Circuit precedent on bankruptcy trustee liability and immunity.  *Sherr v. Winkler*, 552
F.2d 1367 (10th Cir.1977).  However, the main point is that nothing in *Continental Coin*
purports to create a new federal common law cause of action for "grossly negligent
breach of fiduciary duty."  Counsel for Mr. Portillo acknowledged that there is not "a
case exactly on point" standing for the proposition that "a purchaser or potential
purchaser of real or personal property in a bankruptcy [may] then sue the trustee for
grossly negligent breach of fiduciary duty."  Since such a cause of action does not exist
as a matter of federal common law, the Court rejects Mr. Portillo's asserted
counterclaim.

19

**2.**   **If Mr. Portillo Is Asserting a State Law Counterclaim for Breach of Fiduciary Duty Against the Trustee, the Breach of Fiduciary Duty Counterclaim Fails.**

Giving Mr. Portillo the benefit of the doubt, perhaps he is trying to assert a State law counterclaim[54] for breach of fiduciary duty against the Trustee.  After all, the title of the cause of action uses the phrase "Breach of Fiduciary Duty" as the base.  "Breach of Fiduciary Duty" is then modified by some adjectives "Grossly Negligent."  Then, in the body of the cause of action, Mr. Portillo repeatedly emphasizes the key feature of a breach of fiduciary duty claim:  a duty.  Five times in five different paragraphs, Mr. Portillo asserts that "Mr. Hill had a *duty*."  (Emphasis added.)[55]  To be a little more specific, the next seven paragraphs of the counterclaim refer to "fiduciary duty" or "fiduciary duties" and assert that the Trustee "failed to fulfill his *fiduciary duties*." (Emphasis added.)[56]  Notably, however, Mr. Portillo never pled that the Trustee owed any fiduciary duties *to Mr. Portillo.*

The elements of a breach of fiduciary duty claim under Colorado law are:

> (1) that the defendant was acting as a fiduciary of the plaintiff; (2) that he breached a fiduciary duty to the plaintiff; (3) that the plaintiff incurred damages; and (4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages.

*Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993) (quoted in *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) and *SGS Acquisition Co. Ltd. v. Linsley*, 352 F. Supp. 3d 1109, 1119 (D. Colo. 2018)).  *See also Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106 (Colo. 1987) (describing certain elements of breach of fiduciary duty claim); *Miller v. Byrne*, 916 P.2d 566, 575 (Colo. App. 1996) (same); *FDIC v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1476 (D. Colo. 1996) (describing elements of breach of fiduciary duty claim); *In re Application of Mattson*, 2021 WL 1698929, at *10 (D. Colo. Apr. 29, 2021) ("The elements of [Colorado] breach of fiduciary duty are:  (1) Defendant is acting as a fiduciary of the Plaintiff; (2) Defendant breaches a fiduciary duty to the Plaintiff; (3) Plaintiff incurs damages; (4) Defendant's breach of fiduciary duty is the cause of Plaintiff's damages."); COLO. JURY INSTR. 26:1 (CIVIL TRIALS) (CLE 2009).  During closing argument when trying to explain Mr. Portillo's counterclaim, his counsel articulated similar elements:  duty, breach, causation, and damages.

---

[54]   Although Mr. Portillo potentially asserted a Colorado breach of fiduciary duty counterclaim, hereinafter and for ease of reference, the Court uses the terms "counterclaim," "claim," and "cause of action" loosely and interchangeably when referring to Mr. Portillo's counterclaim.
[55]   Docket No. 56 ¶¶ 76-80.
[56]   *Id*. ¶¶ 81-87.

The existence of a fiduciary relationship is central to a claim for breach of fiduciary duty.  According to the Colorado Supreme Court:

> "A fiduciary relation[ship] exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]."  *Moses v. Diocese of Colo.,* 863 P.2d 310, 321 (Colo. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979)); *see also Destefano v. Grabrian,* 763 P.2d 275, 284 (Colo. 1988) ("A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking.").  A fiduciary relationship may exist as a matter of law or may arise where one party occupies a superior position relative to another.  *Moses,* 863 P.2d at 321 (citing *Bailey v. Allstate Ins. Co.,* 844 P.2d 1336, 1339 (Colo. App. 1992); Stuart M. Speiser et al., *The American Law of Torts,* § 36:81 (1983) ).  However, an unequal relationship does not automatically create a fiduciary duty.  *Id.* at 322.  In order to be liable, the superior party must assume a duty to act in the dependent party's best interest.  *Id.* (citing *Hill v. Bache Halsey Stuart Shields Inc.,* 790 F.2d 817 (10th Cir. 1986); *First Nat'l Bank of Meeker v. Theos,* 794 P.2d 1055 (Colo. App. 1990)).

*Brodeur v. Am. Home Assur. Co.,* 169 P.3d 139, 151 (Colo. 2007).  *See also* COLO. JURY INSTR. 26:2 (CIVIL TRIALS) (CLE 2009) ("A fiduciary relationship exists whenever one person is entrusted to act for the benefit of or in the interests of another and has the legal power to do so.").

Mr. Portillo suggests that the Trustee is a fiduciary pursuant to Section 704(a)(1) and 28 U.S.C. § 959(b).  Section 704(a) sets forth the general duties of Chapter 7 trustees and provides, in relevant part:

> The trustee shall — (1) collect and reduce to money property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received . . . (4) investigate the financial affairs of the debtor; . . . (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee . . . .

Section 704(a)(1).  Section 704(a)(1) is supplemented in part by Fed. R. Bankr. P. 2015(a)(1) (also referenced by Mr. Portillo), which states:  "A trustee . . . shall . . . in a chapter 7 liquidation case . . . file and transmit to the United States trustee a complete

inventory of the property of the debtor within 30 days after qualifying as a trustee . . . ."[57] The other statute mentioned by Mr. Portillo, 28 U.S.C. § 959(b), requires trustees to "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated . . . ."

Although Section 704(a)(1) and 28 U.S.C. § 959(b) are best characterized as statutory duties, Mr. Portillo is correct that they also serve as the basis for fiduciary duties.  In *In re Spence*, 497 B.R. 99 (Bankr. D. Colo. 2013), the bankruptcy court put it this way:  "Stemming from the section 704 statutory duties, Chapter 7 trustees have additional common law fiduciary obligations to protect the interests of the estate and all estate beneficiaries, including the creditors who have claims against the estate."  *Id*. at 108; *see also Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1145 (1st Cir. 1992) (". . . the chapter 7 trustee is charged with the fiduciary duty to administer the chapter 7 estate expeditiously in the best interests of the estate"); *Jubber v. Bird (In re Bird),* 577 B.R. 365, 375 (10th Cir. BAP 2017) ("A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured."); *Hunter v. Madrid (In re Hunter)*, 553 B.R. 866, 872 (Bankr. D.N.M. 2016) ("Bankruptcy trustees are fiduciaries and owe estate beneficiaries the duties of loyalty and care.").  So, there is no doubt:  "A chapter 7 trustee is, of course, a fiduciary." *Ebel v. King (In re Ebel)*, 338 B.R. 862, 873 (Bankr. D. Colo. 2005).

However, merely asserting that the Trustee is a fiduciary is not enough.  Justice Frankfurter explained:

> But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry.  *To whom is he a fiduciary?* What obligations does he owe as a fiduciary?  In what respect has he failed to discharge these obligations?  And what are the consequences of his deviation from duty?

*SEC v. Chenery Corp.*, 318 U.S. 80, 85-86 (1943) (emphasis added).  In order to prevail on a breach of fiduciary duty counterclaim against the Trustee, Mr. Portillo first must show that the Trustee owes a fiduciary duty *to him*.  *Graphic Directions,* 862 P.2d 1022 (elements of breach of fiduciary duty claim require that "the defendant was acting as a fiduciary *of the plaintiff*" and the defendant "breached a fiduciary duty *to the plaintiff*") (emphasis added); RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR ECONOMIC HARM § 16 (ALI 2020) ("An actor who breaches a fiduciary duty is subject to liability *to the person to whom the duty was owed."*) (emphasis added).  This is where Mr. Portillo just misses the mark.

---

[57]     The Trustee confirmed that he did not prepare the inventory required by Rule Fed. R. Bankr. P. 2015(a)(1).  He testified that Fed. R. Bankr. P. 2015 is "not mandatory in this district."  The Court finds the assertion troubling and rejects it.  All applicable Rules in the Federal Rules of Bankruptcy Procedure are mandatory and cannot just be ignored.  The Trustee and all Chapter 7 trustees are cautioned to comply with Fed. R. Bankr. P. 2015(a)(1).

A Chapter 7 trustee "owes fiduciary duties only to the bankruptcy estate and its beneficiaries, and, as a result, only beneficiaries can bring claims for breach of those duties against the trustee." *In re Christensen*, 2020 WL 2027232, at *4 (Bankr. D. Utah Mar. 27, 2020) (further clarifying that "beneficiaries" "encompasses creditors of all kinds and, in [surplus] cases, shareholders"). *See also Mosser v. Darrow*, 71 S. Ct. 680, 682 (1951) (bankruptcy trustee may be liable in "a case of a willful and deliberate setting up of an interest . . . adverse to the trust [*i.e.,* the bankruptcy estate]"); *Spence*, 497 B.R. at 108 (Chapter 7 trustees have fiduciary duties "to protect the interests of the estate and all estate beneficiaries, including the creditors who have claims against the estate."); *Kowal,* 965 F.2d at 1145 (Chapter 7 trustees owe fiduciary duties "to administer the chapter 7 estate expeditiously in the best interests of the estate"); *Bird,* 577 B.R. at 375 (Chapter 7 trustee owe fiduciary duties to "administer estate property so as to maximize distribution to unsecured creditors"); *Hunter*, 553 B.R. at 872 ("Bankruptcy trustees are fiduciaries and owe estate beneficiaries the duties of loyalty and care.").

The corollary of the foregoing is that the Trustee, as the seller of real property of a bankruptcy estate, does not owe any general fiduciary duties to a potential purchaser of such property (such as Mr. Portillo). *See, e.g., Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1204 (10th Cir. 2005) ("A contract to convey property does not give rise to a fiduciary relationship.")  And, how could it be otherwise?  The seller and buyer of real estate are effectively in an adversarial relationship:  the seller wants to sell for a high price and the buyer wants to buy for a low price.  The seller is most definitely not acting "primarily for the benefit of" the buyer.  *Destefano,* 763 P.2d at 284 ("A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking.").  Even case law cited by Mr. Portillo supports the point.  For example, in the main decision cited by Mr. Portillo, *Continental Coin,* the bankruptcy court noted that:

> A trustee owes two primary duties *to the beneficiaries of the trust*:  a duty of care and a duty of loyalty.  To that extent, a trustee would be liable for breach of fiduciary duty *to a creditor or equity holder of the bankruptcy estate, but not to third parties with whom the trustee may deal*.

380 B.R. at *5 (emphasis added).  And, in the Amended Answer and Counterclaim, Mr. Portillo did not even expressly assert that any fiduciary duty was owed by the Trustee to him.

Notwithstanding the rather obvious nature of the foregoing principal, during closing argument, Mr. Portillo's counsel suggested that the Trustee had a fiduciary duty "to act in Mr. Portillo's best interest."  The tortured argument relies on a snippet of text from *In re Kazis*, 257 B.R. 112 (Bankr. D. Mass. 2001).  In that decision, a Chapter 7 debtor objected to a proposed asset sale under Section 363(b)(1).  Ordinarily, Chapter 7 debtors may not object absent a surplus.  *Christensen*, 2020 WL 2027232, at * 4 ("a debtor counts as an estate beneficiary generally 'only if the debtor has an interest in

surplus proceeds . . .'"); *In re Morreale*, 2015 WL 3897796 (Bankr. D. Colo. 2015) (Chapter 7 bankruptcy debtor may not object to proposed Section 363(b) sale motion unless there is a "reasonable possibility of a surplus").  Turning back to *Kazis*, the bankruptcy court stated:

> In this case all parties agree that there will likely be assets returned to the Debtor . . . .  The Debtor is this case is therefore clearly a party in interest as the holder of some amount of unencumbered equity in the inventory.  Parties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.

*Kazis*, 257 B.R. at 114.  Mr. Portillo fixates on the last part:  "Parties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding."  And, then he makes the leap that he is a party in interest so the Trustee must owe him fiduciary duties.

The argument is a fallacy on many levels.  First, *Kazis* did not involve a breach of fiduciary duty claim at all.  To the Court's knowledge, there is no reported judicial decision suggesting that a purchaser or attempted purchaser of property of a bankruptcy estate is owed any fiduciary duties by a Chapter 7 trustee.  Mr. Portillo admitted as much in closing argument.  So, the whole idea is much ado about nothing.  Second, Mr. Portillo is not really a "party in interest" as that bankruptcy term of art is used.  Section 1109(b) identifies the normal categories of parties in interest for Chapter 11 reorganizations:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The term "party in interest" is not limited by the list of examples contained in Section 1109(b).  *Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*, 998 F.2d 783, 788 (10th Cir. 1993).  However, every "party in interest" must demonstrate pecuniary interests which are *directly affected* by the bankruptcy proceedings.  *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995); *Armstrong v. Rushton (In re Armstrong)*, 303 B.R. 213, 219 (10th Cir. BAP 2004) (same).  In this case, Mr. Portillo is not a creditor, equity security holder, or indenture trustee.  So, he does not fall within the standard "party in interest" categories.  Mr. Portillo also does not have a direct pecuniary interest in the bankruptcy proceedings.  So, he is not a "party in interest."  Mr. Portillo is, instead, a true third party.  Third, even if Mr. Portillo was a "party in interest" in the bankruptcy case, the Trustee still would not owe him any fiduciary duties.  That is because a Chapter 7 trustee "owes fiduciary duties solely to the bankruptcy estate and its beneficiaries . . . ."  *Christensen*, 2020 WL

2027232, at *4.  *See also Mosser,* 341 U.S. at 272 (bankruptcy trustee may be liable in "a case of a willful and deliberate setting up of an interest . . . adverse to the trust [*i.e.,* the bankruptcy estate]); *Spence*, 497 B.R. at 108 (Chapter 7 trustees have fiduciary duties "to protect the interests of the estate and all estate beneficiaries, including the creditors who have claims against the estate"); *Hunter*, 553 B.R. at 872 ("Bankruptcy trustees are fiduciaries and owe estate beneficiaries the duties of loyalty and care.").  And, Mr. Portillo definitely is not the bankruptcy estate or a beneficiary of the bankruptcy estate, so the Trustee owes him no fiduciary duties.  The evidence at trial also was insufficient to establish other elements of Mr. Portillo's breach fiduciary duty claim, such as damages and causation, but the Court need not delve further into the morass because Mr. Portillo failed on the key part of his breach of fiduciary duty cause of action: showing that the Trustee owed him a fiduciary duty.  Thus, the breach of fiduciary duty claim asserted by Mr. Portillo collapses.

**B.      Mr. Portillo Is Entitled to a Remedy: Return of $23,000.00.**

Notwithstanding Mr. Portillo's inability to establish a breach of fiduciary duty cause of action, he is still owed something.  As noted in the Summary Judgment Order, one of the Remaining Issues is the remedy which the Court should impose because Mr. Portillo paid the Trustee $23,000.00 for the Trustee's Deeds which already have been determined to be void.  The Trustee posits that Mr. Portillo should receive a refund.  In the Summary Judgment Order, the Court speculated that Mr. Portillo "may be entitled to additional damages beyond a refund."  The Court invited Mr. Portillo to present evidence at the trial on the "appropriate remedies."

But, Mr. Portillo missed his opportunity to prove something other than entitlement to a full refund of $23,000.00.  Mr. Portillo presented no admissible evidence showing the current value of the real estate described in the Trustee's Deeds.  So, the Court does not know whether the current value increased, decreased, or stayed the same since the Trustee's Deeds were issued in 2016.  Mrs. Loya seemed to indicate that Mr. Portillo or she paid property taxes for the last several years.  However, neither Mr. Portillo nor Mrs. Loya provided any details.  So, the Court does not know how much was paid in taxes, if any.  Mr. Portillo has made no improvements to the real estate covered by the Trustee's Deeds.  As Mrs. Loya testified, "[i]t's pretty much bare land."  And, it remains that way today.  There are no utilities (such as electricity, gas, or water connections).  There are no permanent structures.  There is no fence.  There are no paved roads.  Nothing differentiates the real estate from surrounding land: it is not unique.  Other than the occasional visit, Mr. Portillo has not used the real estate described in the Trustee's Deeds.  And, Mr. Portillo failed to show any agricultural potential (especially with no water).

In sum, the Court received no evidence that Mr. Portillo has suffered any damage at all from the Trustee's Deeds being void (except for his payment of $23,000.00 at the auction on August 26, 2016).  Under such circumstances, the only viable available remedy is to direct the Trustee to return the $23,000.00 paid by Mr. Portillo for the void

Trustee's Deeds, along with interest.[58]  Neither party advocated for any particular interest rate.  In the absence of any argument otherwise, the Court will direct that interest be paid at the Federal Judgment Rate set forth in 28 U.S.C. § 1961 from August 26, 2016, until the Judgment is satisfied.

## VII.    Conclusion.

In an effort to narrow the issues for trial, the Trustee requested summary judgment determining that:  (1) the two Trustee's Deeds are void; and (2) the Webb Deed is valid and enforceable.  The Trustee met his summary judgment burden.  So, the Court entered the Summary Judgment Order.  Entry of the Summary Judgment Order left only the two Remaining Issues for trial:  (1) appropriate remedies; and (2) Mr. Portillo's counterclaim against the Trustee for "grossly negligent breach of fiduciary duty."  For the reasons set forth above:

The Court ORDERS that Mr. Portillo's counterclaim against the Trustee for "grossly negligent breach of fiduciary duty" is DENIED.  Judgment shall enter in favor of the Trustee and against Mr. Portillo on such counterclaim.

The Court ORDERS that as a remedy for the Trustee's Deeds having been declared void, the Trustee is directed to refund the amount paid by Mr. Portillo back to him along with interest.  Judgment shall enter directing the Trustee to pay Mr. Portillo $23,000.00, plus interest at the Federal Judgment Rate set forth in 28 U.S.C. § 1961 from August 26, 2016, until the Judgment is satisfied.

DATED this 17th day of June, 2022.

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara
United States Bankruptcy Judge

---

[58]    During closing argument, counsel for Mr. Portillo suggested that the Court should order the Trustee to issue new deeds transferring 80 acres (identified as Parcel Nos. 4 and 5 on the chart in section III.B.2 herein) which were part of the Authorized Sale Property under the Sale Order.  However, this last-minute argument was undeveloped and unsupported by evidence.  Furthermore, such an approach would raise numerous problems.  For example, if the Court ordered the Trustee to issue new deeds for the 80 acres, then what amount of money would be refunded to Mr. Portillo?  Without parcel-by-parcel valuation evidence, the Court has no legitimate evidentiary basis to make the necessary allocations and calculations.  So, such suggested approach is not viable based upon the evidence.